ROBERT KITTLE, PLAINTIFF IN ERROR, v. RILEY DE LAMATER, DEFENDANT IN ERROR.

Contract: INTERPRETATION. A contract to print and publish a map containing a lottery scheme, and the execution of a note in payment thereof, constitutes but one transaction, and should be construed as one entire contract.

———: LEX LOCI. Unless a contract is by its terms to be performed in another state, it must be governed by the laws of the place where it is made.

———: ILLEGAL CONSIDERATION. In a contract for the sale of goods in the common and ordinary course of trade, with knowledge merely of the purpose for which they are intended, the vendor cannot set up his own illegal intent as a bar to an action for the recovery of the purchase money; but where the unlawful purpose enters into and forms a part of the contract, payment cannot be enforced. *Per* GANTT, J.

Promissory Note: ENDORSEMENT. To constitute a valid endorsement of a promissory note, there must be, in addition to the mere act of writing the name on the back of the note, a delivery and acceptance of it by the endorsee.

———: DEFENSE TO ACTION UPON. While it is true as a general principle of law, that a note is good in the hands of an endorsee, though it may not be valid as between the original parties, yet if it is transferred after maturity, the endorsee takes it subject to all the equities which exist between the maker and the promisee; or if the note be founded upon an illegal consideration, prohibited by some positive statute, no recovery can be had, even though the endorsee may not be privy to the original transaction; or if the endorsee is implicated in the original transaction, the maker may set up any defense which would have availed against the promisee. But in order to make the latter defense available, it must clearly appear that the endorsee had notice of such circumstances as would have avoided a recovery on the note in the hands of the original promisee.

———: DEFENSE; EVIDENCE. Where the maker of a negotiable promissory note is sued by an endorsee, and pleads that the note was given upon an illegal contract prohibited by statute, and also pleads that the note was not transferred to the endorsee before it became due, all the evidence in respect to the contract between the original parties, and the endorsement and delivery of the note to the endorsee, should be submitted to the jury for their determination.

ERROR to the district court of Dodge county. Suit on a promissory note for one thousand dollars, dated April

10, 1872, and payable sixty days after date at the Park Bank, New York, given by plaintiff in error, Robert Kittle, to Asher & Adams, and by the latter endorsed in blank and deposited for collection in the Park Bank, New York, May 25, 1872. Defendant in error, Riley DeLamater, claimed to be the owner of the note, having received the same in payment of a debt owing to him by Asher & Adams, and that it was assigned and delivered to him by endorsement before it became due. The defense was, that the note was given on a contract between Kittle and Asher & Adams, wherein the latter agreed to print for Kittle certain maps containing a lottery scheme; that the consideration for which the note was given had failed, the maps having never been delivered; that the defendant in error was not the *bona fide* holder of the note; that the note was never transferred to him before it became due; and the law of the state of New York prohibiting lotteries. The answer was denied by the replication, except as to the law of New York concerning lotteries, which was admitted. Upon the trial of the cause before Mr. Justice Maxwell, sitting in the district court for Dodge county, and a jury, the defendant in error offered in evidence the note sued upon and the protest thereto attached, and then rested his case. The plaintiff in error to maintain the issues on his part, read in evidence the deposition of DeLamater, who testified that he purchased the note, before it became due, of Asher & Adams; that Asher and Adams owed him and he took the note in payment of the debt; that it was not *actually delivered* to him, but deposited in the Park Bank by Asher & Adams for collection, who endorsed the same in blank, and *told him* that they put it in the bank to his credit; that he *never saw* the note until after it was protested; and that he never exercised any act of ownership over the note until after its protest when he sent it to Nebraska to be sued upon in this action. De Lamater also testified that he

knew of the *transaction* which caused the note to be given, *before* he purchased the note. The plaintiff in error then offered to show from his own testimony that the consideration for which the note was given was illegal, and that De Lamater knew of its illegality before he received the note, and before the note became due. The defendant in error objected, and the objection was sustained by the court to which exceptions were taken. The court then directed the jury to return a verdict against the plaintiff in error for the amount claimed, upon which after the overruling of a motion for a new trial, judgment was entered. Kittle, who was the defendant in the court below now brings. the cause here by petition in error. The questions asked the plaintiff in error by his counsel, which were objected to, will be found in the opinion of the court.

*Shed & Marlow*, for plaintiff in error.

I. The consideration of a promissory note being for the performance of an act which is prohibited by statute, the note is void, and no recovery can be had. *Marienthal, Lehman & Co. v. Shafer*, 6 *Iowa*, 223. *Dolson v. Hope*, 7 *Kan.*, 161. *Wide v. Webb*, 20 *Ohio State*, 431. *Tracy v. Talmage*, 14 *New York*, 162. 2 *Pars. Contr.*, 673–675. 1 *Pars. Notes and Bills*, 212.

II. The consideration of a promissory note being partly illegal, the whole note is void, and no recovery can be had. *Metcalf Contr.*, 246. *Baldwin v. Palmer*, 10 *N. Y.*, 232. *Stanley v. Nelson*, 28 *Ala.*, 513. *Deering v. Chapman*, 22 *Maine*, 488.

III. When the sale of an article is not prohibited by statute, and the article sold is to be used for an illegal purpose, which is known to the seller at the time the sale is made, and the seller does anything beyond making the

sale, by assisting the purchaser in the unlawful enterprise for which the article was purchased, no recovery can be had. *Tracy v. Talmage*, 14 *N. Y.*, 162. *Tantum v. Kelly*, 25 *Ark.*, 209. *Wood v. Stone*, 2 *Cold.*, 369.

IV.   A note made in one state, but sued in another, is governed as to questions of illegality of consideration by the laws of the state where it was made, if those laws are properly pleaded and proved. *Hull v. Augustine*, 23 *Wis.*, 383.

V.   This action being brought by an assignee, who alleges that he purchased the note before due, and having introduced it in evidence to the jury, the defendant was called upon to re-but the presumption of the plaintiff's having purchased it before due, in order to lay a foundation for his defense.

VI.   The note in question being deposited in the Park Bank, by the payees to their credit, the bank held it as a special deposit. *Story on Bailments*, *Sec.* 88.

VII.   A promissory note, purchased before maturity, with notice that the consideration was for the doing of an act prohibited by statute, or was given without consideration, is a sufficient foundation to allow the maker to prove those facts when pleaded as a defense to the action.

*N. H. Bell*, for defendant in error.

I.   The evidence shows that the note was endorsed in blank by payees, and was in possession of the defendant in error on the trial in the court below; therefore, there was a *prima facie* presumption of law in his favor to the extent that he was the owner of it; that he took it for value before dishonor, and in the regular course of business. *Peter v. Prout*, 3 *Gray*, 502. *Hunter v. Kibbe*,

Kittle v. DeLamater.

5 *McLean*, 279. *Warren v. Gilman*, 15 *Maine*, 70. *Kelley v. Ford*, 4 *Iowa*, 40.

II. De Lamater was then *prima facie* an innocent holder, and entitled to recover on the note without further proof, in the first instance, than the introduction of the same in evidence.

III. The burden was üpon the plaintiff in error, at the very threshold of his defense in the court below, to show clearly that the note was transferred after maturity, or that the endorsee was apprized of such circumstances as would have avoided the note in the hands of the endorser. *Parker v. Challis*, 1 *N. H.*, 254. And this too, before any proof could be made of the failure or illegality of consideration, for these are no defenses against a note in the hands of an innocent purchaser.

IV. Receiving the note in payment and extinguishment of a pre-existing debt, was in the "usual course of business," and entitled the defendant in error to protection. *Percival v. Frampton*, 2 *Comp. Mees. & Ros.*, 180. *Swift v. Tyson*, 16 *Peters*, 1. *Riley v. Anderson*, 2 *McLean*, 589. *Varnum v. Bellamy*, 4 *Id.*, 87. *Bank of Sandusky v. Scoville*, 24 *Wend.*, 115. *Carlisle v. Wishart*, 11 *Ohio*, 172.

V. If this was an accommodation note, as contended by plaintiff in error, and there was no restriction as to the mode of using it, then Asher & Adams, payees, could transfer it either in payment or as collateral security for an antecedent debt, and the maker will have no defense. *Rutland Bank v. Buck*, 5 *Wend.*, 66. *Lathrop v. Morris*, 2 *Sandf.*, 7. *Mohawk Bank v. Corey*, 1 *Hill*, 513. *Matthews v. Rutherford*, 7 *La.*, 225. *Appleton v. Donaldson*, 3 *Penn. State*, 386. *Lord v. Ocean Bank*, 20 *Id.*, 384. *Boyd v. Cummings*, 17 *New York*, 101.

VI.  We think the court did not err in sustaining plaintiff's objections to the questions asked Robert Kittle on the trial because no foundation had been laid for an inquiry into the consideration of the note.  At most, responsive answers to those questions would only have shown that the consideration for the note was the printing of certain maps containing a lottery scheme, and that plaintiff knew that such was the fact at the time the note was executed.  But this evidence would have been immaterial and irrelevant under defandant's answer, because defendant pleads, or tries to plead, not a want, but a failure of consideration which this evidence would in no way have tended to show, and because the *printing* of maps containing a lottery scheme is not illegal in New York state, nor elsewhere to our knowledge.

VII.  Knowledge on the part of the plaintiff at the time he took the note that it was not to be paid on a specified contingency, is not sufficient to defeat his right to recover, although the contingency had then happened, if he was ignorant of this fact.  *Adams v. Smith*, 35 *Maine*, 324.  *Ferdon v. Jones*, 2 *E. D. Smith*, 106. *Davis v. McCready*, 4 *Id.*, 565.

VIII.  The holder of negotiable paper does not lose his rights by proof that he took the paper negligently, nor unless fraud be shown.  *Raphael v. Bank of England*, 17 *C. B.*, 161.  *Matthews v. Poythress*, 4 *Georgia*, 287.  *Ellicott v. Martin*, 6 *Maryland*, 509.  *Lawson v. Weston*, 4 *Esp.*, 56.  *Goodman v. Harvey*, 4 *Nev. and M.*, 372.  *Goodman v. Simonds*, 20 *How.*, 343.

GANTT, J.

This action is founded on a promissory note made by Kittle, the defendant in the district court and plaintiff in error here, at New York, April 10, 1872, by which he promises

to pay to the order of Asher & Adams, one thousand dollars, sixty days after date, at the Park Bank, New York; and De Lamater, the plaintiff in the district court and defendant in error here, alleges that before the note became due, it was transferred and delivered to him by endorsement. Kittle, in his answer, denies the transfer of the note before it became due, and that De Lamater ever was the owner of the same; and alleges that the note was by him given to Asher & Adams, on a contract between him and them, wherein they agreed to print and publish for him a large number of maps, which were to be numbered respectively from one upwards, and agreed to print on said maps a lottery scheme, to be known as the Eureka Map Lottery Scheme for the distribution of 258 prizes by chance, varying from $50 to $20,000; and that of the amount received on the sale of the maps, $100,000 were to be devoted to the founding of a National Institute for the relief of travelers in distress, and $100,000 to the purchasers of the Eureka Maps. And he further alleges that the contract was made with said Asher and Adams for the purpose of disposing of property in Nebraska, by drawing or lottery, and they knew that such was the object of such scheme, and that they aided and assisted him in preparing said scheme and agreed to publish the same. And he further alleges, that the said Asher & Adams wholly failed to comply with their contract and that he never received the maps; and further pleaded the statute of New York, prohibiting raffling and lotteries, which makes it a highly penal offense to "open, set on foot, carry on, promote or draw, publicly or privately, any lottery, game or device of chance, of any nature or kind whatsoever, or by whatsoever name it may be called, for the purpose of exposing, setting to sale, or disposing of any houses, lands, tenements or real estate, or money, goods, or things in action," and providing further that "no person

shall by printing, writing, or in any other way, publish
an account of such illegal lottery, game or device, stating
when or where the same is to be drawn, or the prizes
therein, or any of them, or the price of a ticket or share
therein, or where any ticket may be obtained therein, or
in any way aiding or assisting in the same; whoever
offends against this provision shall be deemed guilty of a
misdemeanor," which is punishable by fine and impris-
onment. The replication denies each allegation of the
answer, except the law of New York on the subject of
lotteries, which is admitted as stated in the answer. Upon
these pleadings the cause went to trial by a jury.

In the consideration of the questions raised by the
assignment of errors, it may first be observed, that in
law it seems clear that the contract to print and publish
the Eureka Map and Lottery Scheme, as alleged in the
answer, and the execution of the note by the plaintiff in
error to Asher & Adams, must all be taken as one trans-
action, and as constituting but one contract. *Wing v.
Cooper*, 37 *Vermont*, 178. Now the first question pre-
sented for our consideration is: Does the contract come
within the statute of New York prohibiting lotteries,
etc? Is the entire contract, as between the plaintiff in
error and Asher & Adams, void under the statute?

The record shows that the contract to print and pub-
lish the Eureka lottery scheme was made, and the note
was executed and made payable in New York, and with-
out any terms for the performance of any one act in
respect to the subject matter of the contract or payment
of the note elsewhere. Therefore, so far as the entire con-
tract is concerned, it must be governed by the laws of the
state of New York; for it is a well established rule of
law that, unless a contract is by its terms to be performed
in another state, it must be governed by the laws of the
place where it is made.

It is said that " the *lex loci* operates not only in respect

to the nature, obligation, and construction of contracts, and the formalities and authentications requisite to the valid execution of them, but also as to their discharge." 2 *Kent. Com.*, 459.

It is a general rule that whatever constitutes a good defense by the law of the place where the contract is made, or is to be performed, is equally good in every other place where the question may be litigated. *Jewell v. Wright*, 30 *New York*, 264.

The statute makes it a penal offense to *set on foot, to promote*, either publicly or privately, any lottery, or to *print, write*, or in any other way to publish an account of any such illegal lottery, stating the *prizes* therein or any of them, or the *price of a ticket or share therein*, or in any way to *aid or assist* in the same. The plaintiff in error substantially alleges that Asher & Adams contracted to *print* and *publish the maps for the purpose of disposing of property by drawing or lottery*, knowing such was the object of the scheme, and that they also *aided and assisted* him in preparing said scheme. I am of the opinion that these allegations, if true, clearly brings the entire contract within the prohibitions of the statute in respect to the contracting parties. And this construction of the contract, I think, is sustained by the decisions of the courts of New York. *Charles v. The People*, 1 *New York*, 184.

It is true that in *Tracy v. Talmage*, 14 *New York*, 176, Selden, J., says, " I consider it as entirely settled by the authorities that it is no defense to an action brought to recover the price of goods sold, that the vendor knew that they were bought for an illegal purpose;" and Lord Mansfield has said, " The seller indeed knows what the buyer is going to do with the goods; but the interest of the vendor is totally at an end, and his contract complete by the delivery of the goods." Undoubtedly this is the law in respect to the sale of goods in the common and

ordinary course of trade, and numerous authorities could be cited in support of it. But in *Tracy v. Talmage, supra*, the rule is also clearly enunciated, that if it is made a part of the contract that the goods shall be used for such illegal purpose, or if the vendor has done some act in aid or furtherance of the unlawful design, there cannot be a recovery. The learned *Justice* says, that "where the seller does any act which is calculated to facilitate the smuggling, such as packing the goods in a particular manner, he is regarded as *particeps criminis*, and cannot recover."

In *Waymall v. Reed*, 5 *T. R.*, 590. Buller, J. says, that "this cause does not rest merely on the circumstances of the plaintiff's knowledge of the use intended to be made of the goods; for he actually assisted the defendant in the act of smuggling, by packing the goods up in a manner most convenient for that purpose."

In *Cannan v. Bryce*, 3 *Barn and Ald.*, 179. Abbott, J. says, that "it will be recollected that I am speaking of a case wherein the means were furnished with a full knowledge of the object to which they were to be applied, and for the express purpose of accomplishing that object." *Lightfoot v. Tennant*, 1 *Bos. and Pull.*, 551. *McKinnall v. Robinson*, 3 *Mees. and Wels.*, 434.

I think the rule of law is well established in reason and upon sound policy, as well as by authority, that in a contract for the sale of goods in the common and ordinary course of trade, with knowledge merely of the purpose for which they are intended, the vendor cannot set up his own illegal intent as a bar to an action for the recovery of the purchase money; but that where the unlawful purpose enters into and forms a part of the contract, payment cannot be enforced.

But it is contended that the defendant in error is an innocent holder of the note, and that it was endorsed to him before it became due. How did he obtain it? It is said that

he took it in part payment of an old debt due to him from Asher & Adams. . But was the note endorsed before due and delivered to him, or in good faith deposited in the hands of a third person for him?

To constitute a valid endorsement there must also be a delivery and acceptance by the endorsee of the note. This doctrine appears to me to be so well expressed in *Clark v. Sigourney*, 17 *Conn.*, 519, that I adopt it as a sound principle of law. The court says: "It is a universal principle, applicable to every contract, whether executed or executory, evidenced by a written instrument, that the instrument must be delivered by the party making the transfer or promise, to the party to whom it is made, and be accepted by the latter; the delivery by the former being evidenced by his assent to the transfer or promise, and the acceptance of the latter, the evidence of his consent to receive it; and both unitedly showing the meeting of the minds of the parties in the transaction, which is the consummation of the contract.

The delivery however may not be expressly proved, since it may be and usually is, presumed from the circumstances, and especially from the fact that the instrument is in the hands of the party to whom it purports to have been made; a presumption however which may be disproved.

On principle, therefore, the mere act of writing the name on the back of the note, is not sufficient to constitute an endorsement of it; but to complete it as such, the further act of delivery of it by him to the person to whom a title in it is intended to be transferred is necessary." *Adams v. Jones*, 12 *Adl. and El.*, 455. *Marston v. Allen*, 8 *Mees. and Wels.*, 494. *Clarke v. Boyd*, 2 *Ohio*, 60.

But again it is contended that the note is good in the hands of the endorsee, though it may not be valid as between the original parties. This is true as a general

principle of law, but there are exceptions to this general rule and these exceptions may, perhaps, be embraced in three classes.

The first is when the note is transferred by endorsement after it becomes due. In such case the endorsee takes the note, subject to all the equities existing between the original parties. In the second class, the endorsee may not be implicated in, or privy to, the original transaction between the parties, yet there can be no recovery on the notes, if the contract was founded on an illegal consideration, prohibited by some positive statute, or the performance of which is *malum in se;* and the third class is when " the endorsee is implicated in or privy to the original transaction, and on that account the promissor is permitted to set up any defense which would have availed against the promisee. Because the holder's knowledge of that part of the original transaction, which would render the note invalid between the first parties to it, prevents him from being defrauded, and makes him rely solely on the responsibility of the endorser. This reliance is the consequence and not the cause of the notes being discredited." *Perkins v. Challis*, 1 *New Hamp.*, 255. *Aspinwall v. Commissioners*, 20 *How.* 379. *Tracy v. Talmage*, 14 *New York*, 176. *Pars. Contr.*, 381.

But in the third class of exceptions in order to make the defense available, it must clearly appear that the endorsee had notice of such circumstances as would have avoided a recovery on the note in the hands of the original promissee. And it is said that the question whether the endorsee had notice, is one which must be fairly submitted to the jury to determine. *Hull v. Augustine*, 23 *Wis.*, 385.

Now according to the principles of law which seem to be well settled, I am of opinion that the whole evidence in respect to the contract between the original parties, and in respect to the endorsement and delivery of the

note by Asher & Adams to the defendant in error should have been admitted and submitted to the jury for them to determine.

The record shows that the plaintiff in error having testified to a conversation between him and Asher & Adams, in regard to the Eureka Map transaction, at which time the defendant in error was present and wrote a receipt from Asher & Adams to the plaintiff in error for the note in question, the following questions were propounded to him, which were objected to, and the objections were sustained by the court, to which rulings of the court the plaintiff in error then excepted, viz:

1. State whether or not during the conversation between you and Asher & Adams, in the presence and in the hearing of De Lamater, any maps were exhibited containing the lottery scheme set out in your answer? 2. State whether or not, at any time prior to the alleged transfer of this note, and subsequent to the making of the same, you had any conversation with De Lamater, or in his presence and hearing, by which he was advised and informed of the fact that the note was executed in payment of the maps and lottery scheme set up in your answer? 3. What knowledge, if any, had De Lamater before the alleged transfer of the note, that this note was given in payment for the printing of a map containing a lottery scheme in the state of New York? 4. What was the consideration of this note? 5. State what was the contract between you and Asher & Adams concerning the maps and lottery scheme for which the note was given?

To maintain his defense it was necessary for Kittle to clearly prove that the note was given upon an illegal contract, positively prohibited by law, or, if the case came within the third class of exceptions named, where the original transaction would render the note invalid between the first parties, then to prove De Lamater's implication

in, or full knowledge of, the circumstances of the original contract before he received the note, if he received it before it became due.    Hence, I think the court erred in sustaining the objections to the above questions.

If the contract was an illegal one, prohibited by law, the answers to the questions propounded to the witness might tend to disclose such fact.    And certainly it was competent for Kittle to show that De Lamater had been before he received the note, fully informed and advised of the circumstances between Kittle and Asher & Adams, and had full knowledge of the nature and character of the contract between them, upon which the note was given.

The judgment of the district court must be reversed, and cause remanded for further proceedings.

REVERSED AND REMANDED.

CHIEF JUSTICE LAKE concurs.