## Wytheville.

LYNCHBURG NATIONAL BANK v. SCOTT BROS. AND OTHERS.

JULY 11, 1895.

Absent, Buchanan, J.*

1. USURY—*Negotiable Paper—Bona fide holder for Value—Burden of Proof.*
Since the passage of the act now embodied in section 2818 of the Code,
which declares that usurious contracts shall be deemed to be for an
*illegal consideration,* as to the excess beyond the principal sum loaned
or forborne, the plea of usury cannot be sustained in an action on nego-
tiable paper brought by a *bona fide* holder for value, who acquired the
same before maturity in due course of trade. The only effect of such
plea is to cast the burden of proof on the plaintiff to show that he is
such holder; when he has shown this he is entitled to recover.

Error to a judgment of the Circuit Court of Wash-
ington county, rendered October 10, 1894, in an action of
debt wherein the plaintiff in error was the plaintiff, and the
defendants in error and the Bank of Abingdon were the defen-
dants.

*Reversed.*

The opinion states the case.

*Honaker & Hutton* and *White & Penn,* for the plaintiff in
error.

*Daniel Trigg,* for the defendants in error.

*Judge Buchanan was counsel in the court below.

HARRISON, J., delivered the opinion of the court.

This was an action at law instituted in the Circuit Court of Wahington county, in December, 1893, by the Lynchburg National Bank against Scott Brothers, upon a negotiable note for $1,000, bearing date June 3, 1893, executed by Scott Bros., and payable four months after date to S. L. Scott, at the Bank of Abingdon, Va., endorsed by S. L. Scott and the Bank of Abingdon, and discounted by the Lynchburg National Bank. The note sued on is the last of a series of renewals of a similar note discounted by the Bank of Abingdon, December 17, 1888, at an usurious rate of interest, the usurious interest paid said bank aggregating the sum of $506.38. The plaintiff bank discounted the note sued on before maturity, in the due course of business, at six per cent. interest, without any notice of any fact connected with its history, or of any illegality which affected it in the hands of antecedent parties. Before the maturity of the note sued on, the Bank of Abingdon made a general deed of assignment for the benefit of all of its creditors. Among the defenses set up by the defendants, Scott Bros., was that of usury, and all questions of law and fact were, by agreement, submitted to the court, which gave judgment for the plaintiff for the sum of $1,002.25, the principal of said note and charges of protest, subject to a credit of $506.38, with interest on the balance from the date of said judgment. Objections to the rulings of the Circuit Court, adverse to the plaintiff, being regularly saved by bills of exceptions, application was made to this court for a writ of error, which was granted.

In the petition the plaintiff assigns four grounds of error, all raising questions of far more than ordinary interest. In the view, however, taken of the case by this court it becomes necessary to consider but one, and that is, Can the defendants, Scott Bros., in this action, avail themselves of the de-

fense of usury against the plaintiff bank, a *bona fide* holder of the note sued on, for value and without notice of any taint of usury, and received in the due course of business, before maturity, and at a legal rate of discount?

The Statute of Virginia, Code, Section 2818, provides as follows: "All contracts and assurances, made directly or indirectly for the loan or forbearance of money, or other thing, at a greater rate of interest than is allowed by the preceding section, shall be deemed to be *for an illegal consideration*, as to the excess beyond the principal amount so loaned or forborne." This section of the Code is in the words of the Act as passed March 24, 1874, and has been the law in Virginia since that date. By the terms of the statute which was in force in this State prior to April 1, 1873, all contracts and assurances for the loan or forbearance of money founded upon an usurious consideration were declared to be *void*.

The question to be considered is the effect, as to negotiable instruments, of this change in the statute, declaring that such contracts shall be deemed to be for an *illegal consideration*, instead of *void*, as formerly.

These are not meaningless words, and it cannot be doubted that the legislature had some wise purpose in adopting the one, rather than the other, form of expression.

The purchaser or holder of a negotiable instrument who has taken it *bona fide*, for a valuable consideration, in the ordinary course of business, when it was not overdue, without notice of its dishonor, and without notice of facts which impeach its validity as between antecedent parties, has a title unaffected by those facts, and may recover on the instrument, although it may be without any legal validity as between the antecedent parties. 1 Daniel Neg. Inst., p. 576, sec. 769.

I believe the foregoing strong statement of the favor with which negotiable instruments are regarded by the law, is universally accepted as sound. So far as I have been able to

examine the authorities, there is but one exception to the rule just laid down, and that is *when the statute renders such instruments void*. The law extends this peculiar protection to negotiable instruments, because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. The same author says: "When the statute merely declares, expressly or by implication, that the consideration *shall be deemed illegal*, the bill or note founded upon such consideration will be valid in the hands of the *bona fide* holder without notice, but the burden of proof will be upon the plaintiff when the illegal consideration appears, to show that he is a *bona fide* holder without notice." In sections 807 and 808 the same author says: "In many localities negotiable instruments, executed upon gaming or usurious considerations, are upon the same footing as those executed for other illegal considerations; that is, *void* between the parties, but valid in the hands of a *bona fide* holder;" and that "when the instrument was executed upon an illegal consideration, especially if illegal by statute (but not absolutely avoiding the instrument), it throws upon the holder the burden of proving *bona fide* ownership for value,    *    *    *    and in all cases where the statute does not declare the instrument *void*, *bona fide* ownership for value being proved, the holder is entitled to recover."

Story on Promissory Notes, sec. 192, (3d edition,) says: "The same doctrine will certainly apply to all cases of a *bona fide* holder for value without notice before it becomes due, where the original note, or the endorsement thereof, is founded on an illegal consideration, and this, upon the same general ground of public policy, is without any distinction between a case of illegality founded on moral crime or turpitude, which is *malum in se*, and a case founded on the positive prohibition of a statute, which is *malum prohibitum* ; for, in each

case, the innocent holder is, or may be, otherwise exposed to the most ruinous consequences, and the circulation of negotiable instruments would be materially obstructed, if not totally stopped. The only exception is, where the statute creating the prohibition has, at the same time, either expressly or by necessary implication, made the instrument absolutely *void* in the hands of every holder, whether he has such notice or not."

In note 4 to 3 Kent's Commentaries, (11th edition,) p. 100, it is said: "If a note is not declared void by statute, mere illegality in its consideration will not affect the rights of a *bona fide* holder for value." Citing *Noriss* v. *Langley*, 19 N. H. 423; *Converse* v. *Foster*, 32 Vermont, 320; *Johnson* v. *Meeker*, 1 Wis. 436.

The principles in the foregoing text-books are sustained by the following adjudicated cases: *Glenn* v. *Bank*, 70 N. C. 191; *Paton* v. *Colt*, (5 Mich. 505), reported in 72 Amer. Dec., p. 58; *Hay* v. *Ayling*, 16 Ad. & Ellis (side page) 423; *Vallet* v. *Parker*, 6 Wendell, 615; *Oats* v. *National Bank*, 100 U. S. 239, 249, 250; *Sondheim* v. *Gilbert*, (117 Ind.) 10 Am. St. Rep. 28.

In the case of *Converse* v. *Foster*, 32 Vt. 828, cited in note 4 to Kent's Commentaries, *supra*, Judge Poland says: "The English statute against usury and gaming not only imposes a penalty for such illegal acts, but expressly declares that all notes, bills, bonds, and other securities given for such illegal consideration shall be *utterly void*. All the cases that have been cited, and all that can be cited, so far as we know, both English and American, upon this subject, turn upon this very distinction and difference between the statutes. In those cases in which the legislature has declared that the illegality of the contract or consideration shall make the security, whether bill or note, *void*, the defendant may insist on such illegality, though the plaintiff, or such other party between him and the

defendant, took the bill or note, *bona fide*, and gave a valuable consideration for it.    But, unless it has been so expressly declared by the legislature, illegality of consideration would be no defense to an action at the suit of a *bona fide* holder for value without notice of the illegality."

"If the statute declares a security void," says Judge Rodman, in the case of *Glenn* v. *Bank*, 70 N. C. 191, "then it is void in whomsoever's hands it may come.    If, however, a negotiable security be founded on an illegal consideration (and it is immaterial whether it be illegal by common law or by statute), *and no statute says it shall be void*, the security is good in the hands of an innocent holder, or one claiming through him.

"The case of *Hay* v. *Ayling*, above cited, is a notable illustration of the difference.

"Gaming securities were declared void by 9 Anne, chap. 14, sec. 1, and it was held that they were void in the hands of a *bona fide* innocent endorsee.    The Act of 5th and 6th William, chap. 41, sec. 1, modified the act of Anne, and declared they should be illegal.    The court held that, after that act, they could be recovered on by an innocent holder."

Mr. Justice Story, in the case of *Fleekner* v. *U. S. Bank*, 8 Wheat. 308, in delivering the unanimous opinion of the court, says: "The statutes of usury of the States, as well as of England, contain an express provision that usurious contracts shall be utterly void; and, *without such an enactment, the contract would be valid, at least in respect to persons who are strangers to the usury.*"

In *Vallet* v. *Parker*, 6 Wendell, 615, Chief Justice Savage said: "Wherever the statute declares notes void, they are and must be so in the hands of every holder; but, where they are adjudged by the court to be so, for failure of, or the illegality of the consideration, they are void, in the hands of the origi-

nal parties, or those who are chargeable with or have had notice of the consideration.''

In *Sondheim* v. *Gilbert* (117 Ind. 71), 10 Am. St. Rep. 28, Mitchell, Judge, says: ''The authorities justify the statement that a defendant may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value, in all those cases in which he can point to an express declaration of the legislature that the illegality insisted upon shall make the security, whether contract, bill or note, void. * * * But, *unless the legislature has so declared, then no matter how illegal or immoral the consideration may be, a commercial note in the hands of an innocent holder for value will be held valid and enforceable.*'' Citing a number of authorities.

This court in *Branch* v. *Commissioners of the Sinking Fund*, 80 Va. 427, says that a note in the hands of the maker, before delivery, is not property, nor the subject of ownership as such; that it must be issued, or delivered by the maker before any one can become the *bona fide* holder of it. This view is not in conflict with the position taken here, where the question being considered is the difference between contracts declared by the statute to be *void* and those declared to be for an *illegal consideration*, and where the note sued on *was* issued and delivered by the maker. Nor are the authorites quoted to sustain the conclusion here reached in conflict with the view expressed in 80 Va. 427.

If the word *illegal* were construed to mean *void*, as contended for by the learned counsel for the appellees, the change in the statute would be meaningless. A glance at the history of the statute makes it clear that the legislature had an object in its change. The revisors of the Code of 1849 recommended that what is now section 2818 should be adopted by the legislature. The legislature, however, refused to adopt the report of the revisors, and the law still declared all usuri-

ous contracts *void*, until the law was modified, and declared that they should be *void* only as to the interest in excess of six *per cent. per annum ;* but the legislature of 1874 declared that it should be deemed to be for an *illegal consideration* as to the excess beyond the principal sum loaned or forborne.

Commercial paper has ever been regarded with favor by the law, and in view of its growing importance, and its universal convenience in the affairs of men, it is not strange that the law-maker, in the interest of wise public policy, should desire to exempt such paper, in the hands of a *bona fide* holder for value, and without notice, from the hazard and uncertainty to which it was subjected by the law, under a statute which declared the usurious contract *void*.   But, whatever may have been the motive of the legislature in making this change, it is the duty of the court to enforce the law as it is made.

And it is perfectly clear, upon reason and authority, that no matter how *illegal* the consideration may be, a negotiable note in the hands of a *bona fide* holder for value without notice will be held valid and enforceable.

If the maker of a negotiable note contests the right of one who has acquired it by endorsement, for value, before maturity, and without notice of any defense, to recover of him the amount of the note, he must, to prevail, be able to show a statute that in express terms, or by necessary implication, declares the note to be *void*.

The agreed statement of facts in this case shows that the plaintiff in error discounted the note sued on before maturity, and in the due course of business, at six *per cent.* interest; that the plaintiff in error had no notice or knowledge when it discounted the note that it was a renewal of any other note, or that it had ever theretofore been discounted by the Bank of Abingdon, or that any one had at any time received from the defendants in error usurious interest thereon.

The statute (sec. 2818) declaring that all usurious contracts

Opinion.

shall be deemed to be for an *illegal consideration* as to the interest, instead of *void*, as formerly, it follows, from what has been said, that the defendants in error could not avail themselves of the defense of usury to defeat the plaintiff bank of its recovery of the note sued on, or any part thereof.

The judgment of the Circuit Court being in conflict with this opinion, it must be reversed and set aside, and this court will enter such judgment as the said Circuit Court ought to have entered.

Reversed.