COMMERCIAL NATIONAL BANK, A CORPORATION, *Plaintiff in Error*, v. WILLIAM S. JORDAN, *Defendant in Error*.

Opinion filed April 27, 1916.

1. Chapter 5717 Laws of Florida, 1907, entitled "An Act to Prescribe the Terms and Conditions upon which Foreign Corporations for Profit may Transact Business or Acquire, Hold or Dispose of Property in this State," does not declare all contracts, notes or other securities made by or on behalf of any foreign corporation in this State before it has complied with the statutory requirements to be absolutely void. The lgeislative purpose as appearing in such act being to render such contracts unenforceable in the hands of the corporation or its assigns, but enforceable against it or them.

2. Section 4 of Chapter 5717 Laws of Florida, 1907, declaring every contract made by or on behalf of any foreign corporation affecting its liability or relation to property within the State before it shall have complied with the provisions of the Act to be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them, does not expressly nor by necessary implication declare that a negotiable promissory note, taken by such corporation in a business transaction in this State before it had complied with the requirements of the statute, shall be void in the hands

of a *bona fide* holder for value and without notice of the transaction of which such note formed a part.

3.  Where a negotiable promissory note taken by a foreign corporation in a business transaction in violation of the provisions of Chapter 5717 Laws of Florida, 1907, passes into the hands of an indorsee in good faith, without notice, before maturity and for value, it is not subject in his hands to such defenses as may have been available under the statute by the maker against the payee.

Writ of Error to Circuit Court, Duval County; D. A. Simmons, Judge.

Judgment reversed.

*John C. Cooper & Son,* for Plaintiff in Error;

*Powell & Pelot,* for Defendant in Error.

ELLIS, J.—The question presented by this record is: Whether a negotiable promissory note in the hands of an indorsee in good faith and without notice, for a valuable consideration before maturity, is enforceable against the maker, where the promissory note in question was given by the maker in renewal of a note which had been given to a foreign corporation in payment for certain shares of the common stock of the corporation, which corporation had not transacted any business in Florida prior to June 1, 1907, and which at the time the original and renewal notes were executed had not complied with the provisions of Chapter 5717 Laws of Florida, 1907, entitled "An Act to Prescribe the Terms and Conditions upon which Foreign Corporations for Profit may Transact Business, or Acquire, Hold or Dispose of Property in this State."

The sections of Chapter 5717 Laws of Florida, 1907, which are involved in this question are, one, four and six, which are as follows:

"Section 1.   That no foreign corporation shall transact business or acquire, hold or dispose of property in this State until it shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, and shall have received from him a permit to transact business in this State.

Sec. 4.   Every contract made by or on behalf of any foreign corporation affecting its liability or relating to property within the State before it shall have complied with the provisions of this act shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them.

Sec. 6.   This act shall not apply to any foreign corporation whatever transacting business in this State at the time this act shall take effect; Provided, That any such foreign corporation hereafter increasing its capital stock shall comply with the provisions of Section 3 in relation thereto."

In the case of Ulmer v. First National Bank of St. Petersburg, 61 Fla. 460, 55 South. Rep. 405, this court said speaking through Mr. Chief-Justice WHITFIELD, that Chapter 5717 Acts of 1907 does not conflict with, nor impose unlawful burdens upon interstate or foreign commerce, nor does it deny to foreign corporations any right secured to them by the State or Federal Constitutions.   The court having under consideration a similar contract, made by a foreign corporation which had not complied with the statute, held that the making of such contract in the State on behalf of the foreign corporation violates the statute, and the note a part of the contract or transaction will not be enforced by the courts of

the State.   The case cited, however, does not decide the
point presented here, because the pleadings in that case
showed that the note was taken by the indorsee bank
with notice of and subject to its infirmities under the ex-
isting laws, while in the case at bar the pleadings show
that the indorsee bank is a holder of the paper for value
in good faith and without notice of the paper's infirmi-
ties under the law.

   The note was executed and delivered in violation of
the statute.   It was part of the transaction which section
one of the Act forbade the corporation to engage in until
it had complied with the conditions named in the section.
Section eight of the act makes the violation of the pro-
visions of section one by a foreign corporation, or any
officer or agent of such a corporation, a misdemeanor,
and subjects the corporation to punishment by fine, and
its officer or agent violating the provisions of the act to
fine or imprisonment, or both.   So the transaction upon
which the promissory note rests was not only in violation
of the statute, but was a crime punishable by fine and im-
prisonment.

   In 3 R. C. L. p. 1016, subject, "Bills and Notes," sec-
tion 224, the doctrine is announced that it by no means
follows "because a contract made in violation of law,
common or statutory, is void between the original par-
ties; that if given the form of negotiable paper, it is void
in the hands of a bona fide holder.   Indeed, it is the dis-
tinguishing characteristic of the law of negotiable paper
that, when a contract takes that form it is not in the
hands of a bona fide holder, subject to the defense which
avoided it in the hands of the original parties.   It is well
settled by the authorities that, no matter how illegal or
immoral the consideration of a note or bill, it is valid in
the hands of a bona fide holder for value, unless some

statute makes the instrument absolutely void." In support of this text the following authorities were cited: Union Trust Co. v. Preston Nat. Bank, 136 Mich. 460, 99 N. W. Rep. 399, reported also in 4 Am. & Eng. Ann. Cas. 347. A check was certified by an officer of a bank when the drawer of the check at the time did not have the amount thereof standing to his credit on the bank's books. The certification of the check under the foregoing circumstances was forbidden by the statute of Michigan, and punishable as a crime. The check found its way into the hands of a bona fide holder for value before maturity. The court held that the check was not in the hands of a bona fide holder subject to the defense of illegality in its inception, and cited approvingly Vinton v. Peck, 14 Mich. 287; State Capital Bank v. Thompson, 42 N. H. 369; New v. Walker, 108 Ind. 365, 9 N. .E. Rep. 386, 58 Am. Rep. 40; Smith v. Bank, 9 Neb. 31, 1 N. W. Rep. 893, where the court expressed its disapproval of a statement contrary to the doctrine quoted made in Kittle v. DeLamater, 3 Neb. 325; Hart v. Machine Co., 72 Miss. 809, 17 South. Rep. 769; Press Co. v. Bank, 7 C. C. A. 248, 58 Fed. Rep. 321; Lynchburg Nat. Bank v. Scott, 91 Va. 652, 22 S. E. Rep. 487, 29 L. R. A. 827, 50 Am. St. Rep. 860, where a note obligating the maker to pay usurious interest was held to be valid in the hands of a bona fide holder in the absence of a statute which in express terms or by necessary implication declared the note to be void. Judge CARPENTER speaking for the court said: "That though the statute by necessary implication made the contract made in violation thereof absolutely void as to non-negotiable contracts, and as to negotiable contracts in the hands of persons having knowledge of the defects, yet * * * the statute will not be considered to have that effect should the

contract be negotiable in form and be found in the hands of a bona fide holder." There is a note following this case as reported in 4 A. & E. Cas. 347, in which the decisions of many States are cited in support of the proposition that "a negotiable contract will be enforced at the suit of a bona fide holder notwithstanding the instrument would be unenforceable between the original parties by virtue of statutory enactment, unless the statute expressly declares the contract utterly void and of no effect." Pope v. Hanks, 155 Ill. 617, 40 N. E. Rep. 839, 28 L. R. A. 568; Sondheim v. Gilbert, 117 Ind. 71, 18 N. E. Rep. 687, 5 L. R. A. 432; Lynchburg Nat. Bank v. Scott, 91 Va. 652, 22 S. E. Rep. 487, 29 L. R. A. 827, 50 Am. St. Rep. 860. In the latter case it was said: "If the maker of a negotiable note contests the right of one who has acquired it by indorsement, for value before maturity and without notice of any defense to recover of him the amount of the note, he must, to prevail, be able to show a statute that in express terms or by necessary implication, declares the note to be void." The note was for the payment of a sum of money at a usurious rate of interest. The statute in force at the time declared all such contracts and assurances to be for an "illegal consideration." Prior to the enactment of that statute, the laws of Virginia declared such contracts to be void. 1 Parson's Notes & B. 218; 1 Daniel on Negotiable Instruments (5th ed.) §§197-198-808; Irwin v. Marquett, 26 Ind. App. 383, 59 N. E. Rep. 38. The statute under consideration in that case expressly declared "all notes, bills, bonds, conveyances, mortgage or other securities" when the consideration therefor was for money won on the result of a wager, etc., "shall be void." Our conclusion is that the availability of a defense, interposed to the enforcement of a negotiable promissory note in the hands

of a bona fide holder, that the consideration for the note was illegal or that it rests upon a contract or transaction forbidden by statute, depends upon the legislative intent to make such·notes in the hands of such a holder void as clearly expressed by the statute or made to appear by necessary implication.

The statute does not in express terms declare that all contracts, notes or other securities, made by or on behalf of any foreign corporation before it shall have complied with the statutory requirements shall be absolutely void or of no effect whatsoever, nor did this court in the Ulmer case, 61 Fla. 460, 55 South. Rep. 405, hold that such was the legislative intention. The language of the court was: "If the statute has been violated by the foreign corporation in acquiring the note or in making a contract of which the note is a part, the *corporation* cannot enforce the payment of the note in the courts of the State; and if the note was taken by the indorsee bank *with notice* of *and subject* to its *infirmities under* the *existing laws* the *bank* cannot recover through the courts."

In the case of Campbell v. Daniel, 68 Fla. 282, 67 South. Rep. 90, this court having under consideration the same statute, and speaking through Mr. Justice COCKRELL, said: "The statute does not forbid the municipality or any citizen of the State entering into a contract with a non-registered foreign corporation; to the contrary the statute in terms permits the enforcement of the contract on its behalf." Here the essential difference between a void and a voidable contract was pointed out. The clear legislative purpose was to render such contracts unenforceable in the hands of the corporation or its assigns, but enforceable against it or them. The use of the word "void" in the statute in connection with those following necessarily conveys a meaning different from what would

have been the word's significance had it stood alone. While the statute uses the word "void" it describes a "voidable" contract.

Now in this case the contract took the form of a negotiable promissory note, an instrument to which, Mr. Daniel in his work on Negotiable Instruments, says, the law extends peculiar protection "because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect." 1 Daniel on Negotiable Instruments, §197. Yet the maker of the note saw fit to give to it the character of negotiability. He knew or could have ascertained whether the corporation was authorized to transact business in this State when the note was executed. He did not even name the corporation as payee, but named as payee one whom the instrument did not show had any connection with the corporation as officer or agent. He gave out this "courier without luggage" knowing that it was likely to find its way into the hands of an innocent purchaser before maturity. If he may escape upon the defense set up, it must be because the statute expressly or by necessary implication declares that a negotiable promissory note given under such circumstances shall be void in the hands of a bona fide holder without notice of the transaction of which it formed a part. Does the use of the word "assigns" in the following connection: "shall be void on its behalf and on behalf of its *assigns,* but shall be enforceable against it or them," show by necessary implication such to be the legislative purpose? We think not. The word "assigns" when used to designate those who have acquired ownership of a negotiable instrument from the payee or prior indorser, is not synonymous with the word "indorsees." Where a bill or note payable

"to order" is transferred without indorsement, the transferee takes by the law only the right which the payee had and therefore subject to any defense the payer may rightfully assert as against the payee. The instrument may be transferred without indorsement, it is true, but in such case the assignment is not in the usual course of business in accordance with mercantile custom, consequently only such title passes to the assignee as the assignor had and subject to any defense the payer may rightfully assert against the assignor. 1 Daniel on Negotiable Instruments, §741; 3 R. C. L. pp. 966, 1034. The indorsement must be written on the instrument transferred, a transfer by another and entirely distinct instrument is not permissible and will not pass the legal title to a note payable to order free from the defenses the payer may rightfully assert. 1 Daniel Neg. Inst., §§741-664a. One who holds a promissory note payable to order under such a transfer must aver and prove the assignment, he stands in the shoes of his assignor and can recover subject to such defenses as were available against him, although the holder took the note in good faith for value. 1 Daniel Neg. Insts. §§ 741-729; 4 Am. & Eng. Ency. Law (2nd ed.) pp. 255-257; Haug v. Riley, 101 Ga. 372, 29 S. E. Rep. 44, 40 L. R. A. 244. One who takes the instrument as an indorsee, however, in good faith, before maturity and for value, becomes the owner of the instrument and it is not subject in his hands to such defenses as may have been available against the payee. The word "assigns" therefore does not mean "indorsees" in the connection used in the statute, nor is there any indication in the statute that the word was intended to include indorsees. To give the word assigns that meaning would be to read into the statute a purpose which from the ordinary meaning of the words used the legislature did not have.

The plaintiff in error, who was the plaintiff below, declared upon the promissory note as indorsee. The defendant sought by his plea to avail himself of the defense afforded by the statute in cases where the foreign corporation or its indorsee with notice of the instrument's infirmities seek to enforce the contract. The plaintiff demurred to the plea, and the court overruled the demurrer. This action of the court is assigned as error. We think the assignment is well taken. The judgment of the lower court is, therefore, reversed, with instructions to sustain the demurrer to the third plea.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.