## ALICE MAE GARRISON

### V.

## FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SOUTH CAROLINA, ET AL.

Record No. 900909

March 1, 1991

Present: All the Justices

*Henry L. Woodward (David D. Beidler,* on briefs), for appellant.

*William R. Baldwin, III (Hirschler, Fleischer, Weinberg, Cox & Allen,* on brief), for appellees.

JUSTICE LACY delivered the opinion of the Court.

In this case we must decide whether a loan secured by a second deed of trust was null and void and unenforceable by an assignee under the applicable sections of Title 6.1, Chapter 7.2, Article 10 of the Code of Virginia.

In 1984 Alice Mae Garrison applied for and obtained a loan from an unregulated lender, Landbank Equity Corporation, a Virginia corporation. The principal amount of the loan as reflected on the documents was $9,224.19. The loan was secured by a second deed of trust on Garrison's home in Roanoke County. On October 30, 1984, eight days after the loan documents were executed, Landbank Equity sold the note, along with others, to First Federal Savings and Loan Association of South Carolina.

In December 1985 the loan became delinquent. Garrison was notified that on November 25, 1986 foreclosure proceedings would be held under the second deed of trust. On the day before the

scheduled foreclosure, Garrison filed a bill of complaint seeking an injunction to prevent the sale and a declaration that the loan violated Virginia's subordinate mortgage laws and, therefore, was void under § 6.1-330.47(A)[1] or, in the alternative, reformation of the obligation.

The trial court enjoined the foreclosure sale of Garrison's home and decided the merits of the case on her motion for summary judgment based on the pleadings, briefs, discovery materials, and stipulated loan documents. On April 6, 1990 the trial court entered an order denying Garrison's claim that the loan was null and void, "deeming it inequitable on the record to find the loan and related note and deed of trust to be void." The trial court granted Garrison's alternative request for relief, finding that "the inequities of the transaction justified the remedy of reformation." The trial court reformed the loan by excising all interest and other charges from the note, establishing the principal at $6,350.00, and crediting Garrison's payments against that principal, leaving a balance of $4,336.47, with interest payable at the judgment rate of interest from the date of the entry of the order.

Garrison appeals from this order, arguing that the risk management charge, the appraisal fee charges in excess of the actual cost of the appraisal, and the loan discount charge of $2,400 contained in the loan violated the subordinate mortgage statutes and, therefore, that the trial court erred in allowing enforcement, after reformation, of a loan which was null and void.

Although the trial court stated that it would be inequitable to hold the loan void, it did not identify any specific basis for its decision. First Federal asserts three separate grounds on which the trial court could properly have declined to declare that the loan was null and void and unenforceable by First Federal: (1) First Federal is not an agent or principal of Landbank Equity and, therefore, by its terms, § 6.1-330.47(A) does not apply to First Federal; (2) the charges in question are not *interest* charges which exceed those allowed by the statute and, therefore, § 6.1-330.47(A) is inapplicable; and (3) 12 U.S.C. § 1730g (1980) preempts application of the remedy contained in § 6.1-330.47(A). Any one of these propositions, if correct, would support the deci-

---

[1] The Virginia statutes at issue in this case were substantially revised in 1987. However, the General Assembly specifically provided that the former sections would remain applicable to loans closed prior to July 1, 1986 and secured by subordinate deeds of trust or mortgages. Acts 1987, c. 622, cl. 3.

sion of the trial court and make further analysis unnecessary. However, since we conclude that the Garrison note was null and void and unenforceable by First Federal under § 6.1-330.47(A), we discuss each of the points raised in order.[2]

## I.

 Interest and other charges associated with the lending of money have been the subject of governmental regulation for years. By declaring secondary mortgage loans made by unregulated lenders to be null and void and unenforceable under certain circumstances, the General Assembly provided the borrower with the strongest possible remedy. Code § 6.1-330.47(A), the statute imposing this penalty, provides:

> Any contract, note, mortgage, or deed of trust made or received and providing for interest charges in excess of those permitted by §§ 6.1-330.16 and 6.1-330.24, except as hereinafter provided, shall be null and void and unenforceable by the lender or by his assignees, who are agents or principals of the lender.
>
> The provisions of this section shall apply only to loans made under § 6.1-330.16 and shall not apply to any contract or note, or mortgage or deed of trust securing such obligation, which has been assigned to a person who is not the agent or principal of the lender, if such assignee has taken the note or obligation in good faith and in reasonable reliance upon the provisions of § 6.1-330.44.

Reading the first sentence of this section to limit its application to assignees who are agents or principals of the lender, First Federal contends that the remedy provided by this Code section is unavailable against it because it does not come within that category of assignees. Garrison's loan then, First Federal suggests, is not absolutely void, and Garrison is left with whatever other remedies are available for violations of the usury laws. *See, e.g.,* § 6.1-330.45 (1983 Repl. Vol.).

---

[2] In light of our disposition of these issues, consideration of First Federal's assignment of cross-error regarding the method of calculating amounts due is unnecessary.

■ The initial vice in reading the first sentence as proposed by First Federal is that the second sentence would then become virtually meaningless. An otherwise void loan would be enforceable by a non-agent, non-principal assignee, regardless of whether it was taken in good faith and in reliance on § 6.1-330.44.[3] Recognizing this "presumed anomaly," First Federal turns to the history of the section and concludes that the addition of the second sentence in 1973 was intended to expand the protection for assignees, and was not intended to remove the protection previously granted assignees by the first sentence.

■ First Federal's analysis and historical interpretation of the section misconstrue the law and are not persuasive. Rules of statutory construction dictate that a statute should be construed as a whole, and, if it is subject to more than one interpretation, that which will carry out the legislative intent should be applied. *McDaniel* v. *Commonwealth*, 199 Va. 287, 294, 99 S.E.2d 623, 629 (1957); *Rockingham Co-Operative Farm Bureau, Inc.* v. *City of Harrisonburg*, 171 Va. 339, 344, 198 S.E. 908, 910 (1938). Furthermore, no part of an act should be treated as meaningless unless absolutely necessary. *Raven Red Ash Coal Corp.* v. *Absher*, 153 Va. 332, 335, 149 S.E. 541, 542 (1929). Here, both sentences read together can be given effect: The first sentence applies to lenders and assignees who are their agents or principals; the second to assignees who are not agents or principals of the lender.

■ The history of this section and of usury law supports this conclusion. Prior to 1874, the Virginia statute declared all usurious loans to be null and void. *See Munford* v. *McVeigh*, 92 Va. 446, 453-54, 23 S.E. 857, 859 (1896). In 1874, however, the General Assembly amended the law and declared that a usurious loan was illegal, but not null and void. Acts 1874, c. 122, cl. 1. The significance of this change, particularly as it affected an assignee of a usurious note, was addressed at length in *Lynchburg National Bank* v. *Scott Bros.*, 91 Va. 652, 22 S.E. 487 (1895). A loan which is merely illegal as between the borrower and lender never-

---

[3] Former § 6.1-330.44 provides:

No person shall, by way of defense or otherwise, avail himself of the provisions of this chapter, or any other section relating to usury to avoid or defeat the payment of interest, or any other sum, when such loan is made to an individual or individuals or other entity by a financial institution as defined in § 6.1-2.1 or for the acquisition or conduct of business or investment as a sole proprietor, owner, or joint venturers or owners provided the initial amount of the loan is $5,000 or more.

theless remains enforceable by a bona fide purchaser for value. However, if the statute declares the instrument void, it is void in the hands of both the lender and the bona fide purchaser for value. *Id.* at 654-59, 22 S.E. at 488-89.

■ The first sentence of § 6.1-330.47(A) unequivocally declares that a covered loan is null and void. Such a loan would be void in the hands of the lender as well as an assignee. In 1973, as First Federal noted, the General Assembly amended parts of Title 6.1 to limit the types of borrowers who could avail themselves of the nullification remedy. *Piatkowski* v. *Ralph D. Kaiser Co.*, 219 Va. 1015, 1018, 254 S.E.2d 68, 70 (1979); Acts 1973, c. 318. In so doing, the General Assembly expanded the protection afforded lenders and their assignees by subjecting them to fewer claims under § 6.1-330.47(A). By adding the second sentence, the General Assembly further expanded this protection to assignees who were *not* principals or agents of the lender, provided that the assignee took the note under certain conditions.

■ Therefore, the second sentence of § 6.1-330.47(A) applies to First Federal, an assignee who is not the agent or principal of the lender. However, under the facts of this case, First Federal is unable to enforce Garrison's note because First Federal conceded that it did not take the note in reliance on § 6.1-330.44 as required.

## II.

We next turn to the issue of whether the loan was null and void under the terms of § 6.1-330.47(A). First Federal does not contend that the risk management fees and excess appraisal costs were allowable charges, and conceded that the loan discount fee was interest.[4] Nevertheless, First Federal maintains that § 6.1-330.47(A) speaks only of excessive *interest* charges, and while the charges may be illegal or excessive, they will not render the note void under the statute. Furthermore, First Federal asserts that because the loan discount charge was disclosed in the accompanying truth-in-lending documents, the loan complied with § 6.1-330.16(E), and, therefore, § 6.1-330.47(A) was not applicable.

---

[4] First Federal characterized the risk management and excess appraisal charges as "questionable" and "possible overcharges." In oral argument, counsel for First Federal stated that the loan discount fee was, in economic reality, interest and that, while the loan could possibly be usurious, it was not void.

While initially appealing, this position ignores long-standing principles of usury law and public policy.

■ In seeking to exempt the risk management and excess appraisal charges from the category of *interest* charges, First Federal ignores the traditional usury analysis. It is well-settled that any charge which cannot be attributed to either principal or to an allowed charge for collateral service is considered interest. *Chakales* v. *Djiovanides*, 161 Va. 48, 86-93, 170 S.E. 848, 861-64 (1933).

■ Code §§ 6.1-330.16(E) and -330.24 allow only the actual cost of an appraisal to be charged to the borrower, and neither authorizes a risk management charge or loan discount charge. Therefore, these items constitute "interest" for purposes of § 6.1-330.47(A).[5]

Next, First Federal contends that the $2,400 loan discount fee does not qualify as an interest charge in excess of that permitted by § 6.1-330.16 because it was disclosed in the truth-in-lending documents accompanying the loan and, therefore, it complied with, rather than violated, § 6.1-330.16.

At the time Garrison's loan was executed, § 6.1-330.16 established interest rates and allowable service charges associated with the making of various types of loans by unregulated lenders. Regarding secondary mortgage loans, subsection E allowed enforcement of "the interest rate stated therein" and a service charge of no more than 2% of the loan amount. The final sentence of this subsection stated:

> Disclosure of charges, not otherwise specified in the note, deed of trust, or mortgage, in an interest disclosure pursuant to the federal interest disclosures law, shall constitute compliance with this statute.

First Federal's logic is that the loan discount fee was disclosed and, therefore, it constituted compliance with § 6.1-330.16. The loan, as a complying loan, could not contain charges in excess of that section, and consequently, § 6.1-330.47(A) is inapplicable to the loan.

---

[5] As no interest charges are authorized by § 6.1-330.24, it is reasonable to assume that the General Assembly was relying on this principle of usury law when it chose the word "interest," or the reference to § 6.1-330.24 would be meaningless.

Once again, First Federal's statutory construction isolates one portion of a statute from the remainder of the statutory scheme. Under its proposed interpretation, an unlicensed secondary mortgage lender could collect any charge with impunity, regardless of its label or amount, if the charge were disclosed in the truth-in-lending documents. First Federal's view would render meaningless the limitations placed on allowable charges contained in § 6.1-330.16, as well as those in § 6.1-330.24. Such an interpretation effectively would eliminate any controls established by the General Assembly on the amounts and types of charges, including interest charges, applicable to subordinate mortgage loans.

This construction also requires that the phrase "not otherwise specified," in § 6.1-330.16(E), be ignored. There is no dispute that an interest rate of 18% appeared on the face of the note, and First Federal concedes that the loan discount fee was, in fact, interest, regardless of the name ascribed to it in the loan documents. It is also undisputed that the $2,400 was not included as part of the 18% stated rate of interest. First Federal's position would allow a second tier of interest to be collected, even though only one rate was initially disclosed on the face of the note and deed of trust.

To allow the collection of a second tier of interest, as First Federal advocates, undercuts the protection sought for the borrower through the requirement of disclosure statements. Although interest rates are no longer set by legislative fiat, but by agreement between the parties based on market conditions, the General Assembly has continued to provide certain protections to the borrower. These protections include limiting the kinds and amounts of non-interest charges and fees a lender can impose, and requiring full and comprehensible disclosure of all of the charges and terms of the loan. Nothing could be more confusing or deceptive to the borrower than reciting an "agreed" interest rate on one line and then adding additional interest on another. First Federal's construction of § 6.1-330.16(E) must be rejected as in direct conflict with the clear intent of the General Assembly. Rather, the sentence of § 6.1-330.16(E) in issue merely means that allowable charges, not appearing in the note or deed of trust, may be enforced if they are included in the truth-in-lending documents accompanying the loan.

In summary, we conclude that the risk management fee, the excess appraisal charge, and the loan discount fee exceeded

those permitted by §§ 6.1-330.16 and -330.24. Therefore, pursuant to § 6.1-330-47(A), the loan is null and void and unenforceable by First Federal.

## III.

■ Finally our inquiry turns to First Federal's contention that the remedy of § 6.1-330.47(A) is preempted by 12 U.S.C. § 1730g.[6] This provision, part of the National Housing Act, governs interest rates chargeable by federally chartered savings and loan institutions, and provides that if such institution knowingly charges a rate higher than that allowed, the interest shall be forfeited. First Federal maintains that this section applies in circumstances where the institution is a lender as well as where, as here, the institution is an assignee.

■ No state or federal cases have addressed this precise issue. Faced with a similar dearth of precedent regarding the "most favored lender" portion of 12 U.S.C. § 1730g, the United States Court of Appeals for the Fifth Circuit relied on previous interpretations of "nearly identical" provisions regarding federally insured banks, 12 U.S.C. § 1831d, and federally insured credit unions, 12 U.S.C. § 1785(g)(1), both of which were based on the usury provisions governing national banks, 12 U.S.C. §§ 85, 86. The Fifth Circuit concluded that "[c]onsistent interpretation of § 85 and § 1730g (a) appear warranted." *Gavey Properties/762* v. *First Financial S. & L. Assoc.*, 845 F.2d 519, 521 (5th Cir. 1988).

■ We are given no reason to depart from this approach in considering the application of 12 U.S.C. § 1730g to this case. Once again, we are directed to a Fifth Circuit case which involved a usurious note which was originally made and serviced by a mortgage company and later assigned to a national bank. In *Federal Deposit Insurance Corp.* v. *Lattimore Land Corp.*, 656 F.2d 139 (5th Cir. 1981), the obligors claimed that the acceptance of a usurious note by the national bank brought the transaction within the National Bank Act, 12 U.S.C. § 85, and the entire amount of the interest should be forfeited under the usury penalty, 12 U.S.C. § 86. The court held that the statute would apply to usurious discounting of a note by a national bank, but relying on the implicit

---

[6] Title 12 U.S.C. § 1730g was in effect at the time this loan was executed. It was repealed by § 407 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, and has been replaced by new 12 U.S.C. § 1463(g) (1989).

holdings of previous cases, the statute would not be applicable where the bank was not involved as the maker of the usurious loan. *Lattimore Land Corp.*, 656 F.2d at 147-148.

Given the virtual identity in the relevant language of the federal statutes here, and the absence of any decisions reaching contrary results, we adopt the construction previously given the National Bank Act, 12 U.S.C. §§ 85, 86, as applicable to 12 U.S.C. § 1730g. We conclude that the provisions of 12 U.S.C. § 1730g do not apply to a federally chartered savings and loan institution that is only the assignee of a usurious note. Consequently, the application of § 6.1-330.47(A) in this case is not preempted.

For the foregoing reasons, and in the absence of any evidence that the remedies of § 6.1-330.47(A) should not be applied on equitable grounds, *e.g.*, *Heubusch* v. *Boone*, 213 Va. 414, 192 S.E.2d 783 (1972), the judgment of the trial court will be reversed and final judgment entered for Garrison.

*Reversed and final judgment.*