18241.  FIRST NATIONAL BANK OF SANDERSVILLE *v.* MOORE *et al.*

1. Under the law of negotiable instruments as it existed prior to the passage of what is known as the uniform negotiable-instruments law, even a bona fide holder for value of a promissory note, receiving it before maturity, was not protected from the defense set up by the maker or indorser that its consideration was both immoral and illegal, and that the lender participated in the unlawful purpose and design (Civil Code of 1910, § 4286; *Singleton* v. *Bank of Monticello,* 113 *Ga.* 527 (38 S. E. 947); *Hines* v. *Union Bank & Trust Co.,* 120 *Ga.* 711 (48 S. E. 120); *Exchange National Bank* v. *Henderson,* 139 *Ga.* 260 (77 S. E. 36, 51 L. R. A. (N. S.) 549)); but under the law as it now exists, and as it existed at the time the negotiable instrument sued on in the instant case was executed, while the title of a person who negotiates such an instrument is defective when he obtained it for an illegal consideration, a holder in due course nevertheless holds such instrument free from any defense on account of such a defect of title, and every holder is deemed prima facie to be a holder in due course; but when it is once shown that the title of any person who has negotiated the instrument was defective, the burden is thereupon shifted to the holder to prove that he or some person under whom he claims acquired the title as holder in due course,—that is, that he took it in good faith, for value, before maturity, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it.  Ga. L. 1924, p. 126, art. IV.

---

Bills and Notes, 8 C. J. p. 767, n. 17; p. 982, n. 23; p. 983, n. 45; p. 984, n. 60; p. 987, n. 84; p. 990, n. 5; p. 1049, n. 24; p. 1073, n. 3, 4.

2. In the instant case there was ample evidence going to show the illegal use to which the consideration of the note sued on was subjected, and the jury were authorized to find, from the evidence, that the payee of the note, who negotiated it, was the actual lender of the money, and that he participated in the unlawful purpose and design. The burden being thus shifted to the plaintiff to prove that he held in due course, as explained above, and no proof having been offered, to carry the burden thus imposed, the jury were authorized to find in favor of the defendants upon their plea.

3. The special assignments of error are without merit, and are dealt with in the opinion.

DECIDED JANUARY 16, 1928. ADHERED TO ON REHEARING, FEBRUARY 18, 1928.

Complaint; from city court of Wrightsville—Judge Blount. May 14, 1927.

This was a suit by the First National Bank of Sandersville on a promissory note dated October 21, 1924, signed by Moore, payable to C. G. Rawlings, and signed by Rawlings as indorser together with certain other individuals as sureties, all of whom are joined as defendants in the suit. Rawlings, the payee and indorser, filed no defense; but the maker, Moore, together with the defendant sureties, interposed the defense that the note was unenforceable, because its consideration was immoral and illegal, in that the purpose of the loan as made by Rawlings to Moore was to furnish Moore money to buy votes in an election for sheriff, in which Rawlings had induced Moore to become a candidate under the promise that he would finance his campaign for him. The case appears to have been tried in accordance with the law as it existed prior to the passage of the present uniform negotiable instruments law. The distinctive principles of the present law seem not to have been in any wise invoked or referred to. It was a disputed issue on the trial as to whether Rawlings was a party to the illegal and immoral purpose for which the funds were procured, and to which the evidence indicates, without dispute, that they were actually put. The plaintiff, on the trial, contended that the payee Rawlings was not the actual lender of the money, but that he, although the payee of the note, was in truth and in fact nothing more than a mere surety, and that the real lender of the money was the Holt Banking Company, a private institution owned by L. B. Holt, who it appears from the record was also president of the plaintiff bank. There was evidence to the effect that when Moore applied to Rawlings for the money, and after the note had

been executed, Rawlings called in his son-in-law, Wray, and turned the note over to him; that the son-in-law went off with it, and was gone fifteen or twenty minutes, and returned with the money which was then and there delivered to Moore. Wray was not sworn as a witness. The cashier of the plaintiff bank testified that the bank first became the owner of the note by buying it for value, and before maturity, several months after its execution, from the Holt Banking Co. The note does not indicate any indorsement from the Holt Banking Co. Holt, the owner of the Holt Banking Co., and president of the plaintiff bank, did not testify in the case. The cashier of the Holt Banking Co. testified that Holt had brought the note to the Holt Banking Co., but failed to show that the Holt Banking Co. had no knowledge of or interest in the illegal enterprise. A check was introduced in evidence, drawn on the Holt Banking Co., and signed by Holt, president, nine days after the date of the note, containing a memorandum in the words, "for C. H. Moore note." No witness for the plaintiff, however, undertook to show that it bought the note without knowledge of its illegal consideration.

The jury found in favor of the defendant, and the plaintiff excepted to the overruling of its motion for a new trial, on the general grounds as elaborated. It also excepted to the charge of the court, on the ground that it unduly emphasized the contentions of the defendant in stating the contentions of the parties. It excepted because the court erred in charging what is contended as an inapplicable rule of law, to the effect that "any circumstance which would place a prudent man upon his guard in purchasing negotiable paper shall be sufficient to constitute notice to the purchaser of such paper before it is due." Exception was taken also to the charge of the court instructing the jury that certain contracts based upon illegal and immoral considerations, or which are contrary to public policy, are unenforceable, upon the ground that it was inapplicable, and consisted merely of a statement of abstract principles of law, and amounted to an expression of opinion on the part of the court as to the issues and evidence involved. It was further contended that the court erred in failing to charge the jury, on its own motion, that if the Holt Banking Co. loaned the money for which the note sued on was given, although it might have known from the character of the defendant Moore and

the circumstances under which the money was borrowed that he expected to use it in his campaign for the purpose of influencing votes, if the Holt Banking Co. did not participate in any way in the criminal purpose and intent, and was in no way concerned in the result of the election, the note could be enforced. The court did charge the jury that "mere knowledge by a lender of money that a borrower intends to use it for an illegal or immoral purpose will not prevent a recovery of the money loaned; and [a plea] that the lender knew or had reasonable grounds to suspect the purpose for which the money was borrowed, but which does not charge that the lender participated in the illegal transaction or did anything to further the consummation of the unlawful design, sets forth no valid defense."

*A. L. Hatcher,* for plaintiff.

*E. L. Stephens, J. L. Kent,* for defendant.

Jenkins, P. J. As set forth in the foregoing statement of facts, the case appears to have been dealt with by the court and all parties concerned as if the law applicable to the case was that in force prior to the passage of the uniform negotiable-instruments law. The special assignments of error all appear to be based upon contentions applicable to the old law. With reference to the contention of counsel for the plaintiff in error, who was the plaintiff in the court below, that the circumstances testified to in the case indicate that the payee of the note was not in fact the lender of the money, but that he was in truth a mere accommodation indorser, it is provided by the negotiable-instruments law that, while every holder is deemed prima facie to be a holder in due course, yet when it is shown that the title of any person who has negotiated the instrument was defective, the burden is then put upon the holder to prove that he, or some other person under whom he holds, acquired the instrument as holder in due course. It would thus seem that the plaintiff, under the present statute, became charged with the duty of showing that he, or some person under whom he held, was a holder in due course, upon its being shown that the payee of the note had negotiated it, whatever might have been the actual relationship existing between the payee and the borrower. But however this might be, there does not appear to be in evidence any fact or circumstance which might tend to indicate that any other person than the payee was the lender of

the money. The person who it is contended the facts and circumstances indicate was the real lender did not testify in the case, although the evidence shows that he was president of the plaintiff bank. The most that the circumstances sworn to might indicate is that the money which the payee furnished upon the note was derived by him from its discount to some other person. The charge of the court does not appear in any wise to warrant the complaint that the court was unfair or unduly emphasized the contentions of the defendant in stating the respective contentions of the parties. The exception to the excerpt in which the court stated that "any circumstance which would place a prudent man upon his guard in purchasing negotiable paper shall be sufficient to constitute notice to the purchaser of such paper before it is due" could not, even if an erroneous statement as to the law actually applicable to the case, have been harmful to the plaintiff, since, under the rule of law set forth in the first division of the syllabus, it had become incumbent upon the plaintiff to affirmatively establish that it took the instrument without notice of the illegal consideration, or held under some one who thus took it, which proof the plaintiff wholly failed to make. It follows that, the plaintiff having thus wholly failed to carry the burden imposed upon it by law, it could not have been injured by the charge of the court, even if erroneous, dealing with circumstances which might have contradicted its testimony had any such been offered. For the same reason, the charge of the court in giving to the jury the rule of law governing the illegality of certain contracts based upon illegal and immoral considerations could not have been injurious to the rights of the plaintiff, since the plaintiff stood in the same position as if the note had been executed to it, it having failed to put itself in the position of a holder in due course. Nor is there any merit in the last assignment of error, excepting to the failure of the court to charge as set forth in the foregoing statement of facts, since the contention of the plaintiff with reference to this excerpt was fully and appropriately covered by other portions of the charge.

*Judgment affirmed. Stephens and Bell, JJ., concur.*