PEOPLES LOAN & FINANCE CORPORATION *v.*
LATIMER *et al.*

No. 11459. FEBRUARY 11, 1937.

*Blair & Gardner* and *George D. Anderson*, for plaintiff.
*Mozley & Latimer* and *F. T. Mills*, for defendants.

BECK, Presiding Justice. The controlling question in the present case arises out of facts which may be briefly stated as follows: P. B. Latimer executed and delivered a promissory note for $555.48, payable to the order of Barron Electric Company, for an iron stoker. Barron Electric Company was a trade-name used by J. B. Barron, and the name under which he did business. Barron Electric Company, by J. B. Barron, indorsed and transferred the note for value and before maturity to Peoples Loan & Finance Corporation. It was conceded on the trial of the case (a suit by Peoples Loan & Finance Corporation against P. B. Latimer as maker, and J. B. Barron doing business as Barron Electric Company) that the plaintiff was a "holder in

due course" of the note, that the trade-name used by J. B. Barron had not been registered in the clerk's office of the superior court of Cobb county, and that the business was conducted in that county. After making several payments to Peoples Loan & Finance Corporation on the note, Latimer declined to make further payments; and then the suit was filed to recover the balance due. Latimer filed his plea, the material part of which was as follows: "Defendant says that this suit can not be had and maintained, because Barron Electric Company is not a corporation; and the name used being merely a trade-name and not being registered as a trade-name with the clerk of the superior court of Cobb County as required by the acts of the General Assembly of Georgia as of August 15, 1929, that said suit would not be maintainable by the said Barron Electric Company in its own right as payee of said note, and that any assignee or transferee of said note would only be subrogated to the rights of the payee of said note; and that hence said suit is not maintainable and should abate and be dismissed, because of the failure of Barron Electric Company, who was operating under a trade-name, to register his said name as required by law." The Peoples Loan & Finance Corporation filed a demurrer to this plea, and the demurrer was sustained. Thereafter the judge directed a verdict for the plaintiff for the principal and interest due upon the note, with attorney's fees and cost. Latimer carried the case by bill of exceptions to the Court of Appeals, which reversed the judgment of the trial court, ruling that the note "is void by statute and is unenforceable," and that "its 'collection can not be enforced by law, even in the hands of an' innocent purchaser for value, before due, and without notice of defenses to it.'"

The question to be decided by this court is, can a transferee who is the holder in due course of a negotiable promissory note given to one operating under a trade-name which has not been registered as required by law, legally enforce its collection? In other words, was the decision of the Court of Appeals in accordance with the law? It being conceded in the trial that Peoples Loan & Finance Corporation was a holder in due course of the note in question, it is important to consider what constitutes a holder in due course. The Code, § 14-502, defines a holder in due course to be one who has taken the instrument under the fol-

lowing conditions: (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; and (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. If Peoples Loan & Finance Corporation was a holder in due course of the instrument in question, then the next question is, what are the rights of a holder in due course? The Code, § 14-507, defines such rights in the following language: "A holder in due course holds the instrument free from any defect of title to prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." "In 1924 the General Assembly adopted the negotiable-instruments law substantially in the form recommended by the Commissioners on Uniform State Laws. Prior to that time this law had been adopted in nearly all of the other States, and by Congress for the District of Columbia. It superseded the prior law governing negotiable instruments, but did not effect many radical changes, both the old and the new laws being based upon the law merchant, and the new law providing that in any case not provided for therein the rules of the law merchant shall govern." This editorial note, quoted from the Code of 1933, page 353, sets forth the intent and purpose of the passage of the law in question. It is now in force in every State of the Union and the District of Columbia, in substantially the same form as adopted by the General Assembly of Georgia. It was enacted with the intent and purpose of having in all the States a uniform law relating to negotiable instruments, so that a person anywhere in the United States who desired to purchase or negotiate a negotiable instrument would not be compelled to familiarize himself with the laws of any and every State in the Union where the instrument under consideration originated, and would also not be compelled to scrutinize the records of any and every county where such instrument originated, and would also not be compelled to investigate the consideration for which such instrument was given before he could either purchase or negotiate such instrument, except at his own peril. As the law now exists, one who is "a holder in due

course" takes the instrument free from all defenses, except forgery and material alteration. Material alteration is a species of forgery; but even a negotiable instrument that has been materially altered may be enforced by a holder in due course according to its tenor, if that can be ascertained.

In the Code of 1910, § 4286, with reference to holders of negotiable instruments, it is declared: "The bona fide holder for value of a bill, draft, or promissory note, or other negotiable instrument, who receives the same before it is due, and without notice of any defect or defense, shall be protected from any defense set up by the maker, acceptor, or indorser, except the following: 1. Non est factum. 2. Gambling, or immoral and illegal consideration. 3. Fraud in its procurement." Section 3694 of the Code of 1895 contains the same language. Section 2785 of the Code of 1882 is in language identical with that of the Codes of 1895 and 1910. Under the law in force in 1895 and previously, on down to the adoption of the negotiable-instruments law in 1924, there will be found decisions by the Supreme Court, and by the Court of Appeals, not in harmony with the act adopted in 1924. Those decisions correctly interpreted the law as it existed at that time. But we are of the opinion that the law contained in the Code of 1910, § 4286, and in the Codes of 1882 and 1895, is no longer of force in so far as it applies to what is now meant by the expression "a holder in due course" of a negotiable instrument; except, of course, that the law declared in the Code of 1933, § 14-223, as to "forged or unauthorized signature," gives the same right of defense as was given under the old law providing for the defense of "non est factum." When Michie's Code of 1926 was compiled, the editors thereof marked § 4286 of the Code of 1910 "Superseded," and the editor added a note as follows: "This section is superseded by the provisions of the N. I. L. . . Section 4294(23) provides that a person whose signature has been forged or made without his authority is not liable, and such instrument is wholly inoperative as against him. . . It seems that the defenses of illegal consideration (gambling or immoral contracts) and fraud in the procurement are not good as against a bona fide holder for value without notice, these defenses being available only between other holders." And while the statement in this note is not binding authority, it should be given consideration and due weight in passing

on the question involved in this case. Section 4286 of the Code of 1910 (and the identical provision in the Codes of 1882 and 1895) does not appear in the Code of 1933 in the form in which it appeared in the previous Codes; but we have § 14-507, which reads as follows: "A holder in due course holds the instrument free from any defect of title to prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." And to that the codifiers of the Code of 1933 have appended the following note: "Under the prior law, § 4286 of the Code of 1910, there were three defenses good against the bona fide holder. 1. Non est factum; 2. Gambling or immoral consideration; 3. Fraud in the procurement. Forgery and alteration under this law are good defenses against a holder in due course. See §§ 14-223, 14-906, 14-907. Neither the first nor second defense above is a good defense under the N. I. L. against a holder in due course. See § 14-502."

The Court of Appeals in deciding this case cited *Padgett* v. *Silver Lake Park Corporation,* 168 *Ga.* 759 (149 S. E. 180), *Dunn & McCarthy Inc.* v. *Pinkston,* 179 *Ga.* 31 (175 S. E. 4), and *Mobley* v. *Bailey,* 52 *Ga. App.* 578 (184 S. E. 417). But we are of the opinion that the principles of law enunciated in these decisions are not applicable to the instant case, for the reason that the right of a holder in due course was not involved in either instance. In the *Padgett* case the question was between the original parties to the contract declared on; and the same is true of the cases of *Dunn & McCarthy Inc.* and *Mobley,* where a very distinct and different principle was involved from that in the instant case, where the rights of a holder in due course of a negotiable promissory note are involved. In the cases cited by the Court of Appeals there were controversies between the original parties to the contracts declared on. "The holder in due course of a note executed, without consideration, to a foreign corporation doing business in the State without having complied with the statutes, can recover against the maker, although the corporate payee could not." Weir & Craig v. Bonus, 177 Ill. App. 626; Brannan's Neg. Inst. Law (5th ed.), 28. From the same authority (page 557) the following is taken: "A statute declared that any contract made by or on behalf of a foreign corporation failing to comply

with the laws of the State, as to registration, etc., should be 'wholly void on behalf of such corporation or its assigns.' *Held*: The word 'assigns' as used in, the statute did not include a holder in due course of a negotiable instrument made to the order of such corporation." National Bank of Commerce *v.* Pick, 13 N. D. 74 (99 N. W. 63) ; McMann *v.* Walker, 31 Colo. 261 (72 Pac. 1055) ; Commercial Bank *v.* Jordan, 71 Fla. 566 (71 So. 760). In the decision of the Court of Appeals in the case now under consideration were cited the cases of *International Agricultural Corporation* v. *Spencer,* 17 *Ga. App.* 649 (87 S. E. 1101), and *Jones* v. *Crawford,* 21 *Ga. App.* 29 (93 S. E. 515), as authorities upon the question of the note in question being unenforceable even in the hands of an innocent holder who purchased it for value and before it was due. Those two cases were decided seven or eight years before the enactment of the negotiable-instruments law; and we are of the opinion that the principles enunciated therein would not be applicable under the law as it now exists, upon the principle involved. In *Williams* v. *Whited,* 41 *Ga. App.* 398 (153 S. E. 205), the Court of Appeals ruled as follows: "Under the provisions of the negotiable-instruments law, a holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." The defense offered by Latimer in the instant case would have been a defense that he could have offered had the Barron Electric Company brought suit against him on the note. Yet the Court of Appeals ruled that a holder in due course took the instrument "free from defenses available to prior parties among themselves," and the Peoples Loan & Finance Corporation was a "holder in due course" of the instrument sued on. Latimer admitted this fact.

In *Farmers & Merchants Bank of Cleveland* v. *Miller,* 37 *Ga. App.* 668 (141 S. E. 419), the Court of Appeals made the following ruling: "Prior to the passage of what is known as the uniform negotiable-instruments law, the holder of a promissory note was not protected from the maker's defense that the consideration thereof was immoral and illegal, even though the holder may have purchased the note before it was due, and without notice of any defect therein or defense thereto. Thus, a promissory note given

in the year 1921, for the purchase-price of liquors sold in violation of the law is unenforceable, even in the hands of a bona fide holder for value, who takes the same without notice of the consideration" (citing authorities). It is inferable from what has just been quoted that had the note in question been given since the passage of the uniform negotiable-instruments law, the decision of the Court of Appeals would have been different. In the decision of *First National Bank of Sandersville* v. *Moore*, 37 *Ga. App.* 698 (141 S. E. 502), a case involving the question whether or not the holder of the note there in question was what is now known as a "holder in due course," this view is confirmed. The Court of Appeals ruled as follows: "'Under the law of negotiable instruments, as it existed prior to the passage of what is known as the uniform negotiable-instruments law, even a bona fide holder for value of a promissory note, receiving it before maturity, was not protected from the defense set up by the maker or indorser that its consideration was both immoral and illegal, and that the lender participated in the unlawful purpose and design [citing decisions]; but under the law as it now exists, and as it existed at the time the negotiable instrument sued on in the instant case was executed, while the title of a person who negotiates such an instrument is defective when he obtained it for an illegal consideration, a holder in due course nevertheless holds such instrument free from any defense on account of such a defect of title, and every holder is deemed prima facie to be a holder in due course; but when it is once shown that the title of any person who has negotiated the instrument was defective, the burden is thereupon shifted to the holder to prove that he or some person under whom he claims acquired the title as holder in due course, that is, that he took it in good faith, for value, before maturity, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it. Ga. L. 1924, p. 126, art. IV."

The defendant in the trial set up a defense that would have been available between him and the original payee. The statute says, however, that the holder in due course of a negotiable instrument holds the same free from such defense. The statute contains no language declaring that a negotiable promissory note given to a business conducted under a trade-name which has not been registered is void and unenforceable in the hands of a holder in due

course. In view of the statute which we have quoted, and the authorities cited, giving effect to the plain language thereof and the inferences plainly deducible therefrom, the trial court did not err in sustaining the demurrer to the plea and answer of the defendant. The Court of Appeals erred in reversing that judgment.

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*