### 37111. CREDIT EQUIPMENT CORPORATION *v.* PENDLEY *et al.*

DECIDED JULY 11, 1958.

*Ford & Houston, P. B. Ford, W. C. Smith,* for plaintiff in error.
*Robert B. Williamson,* contra.

QUILLIAN, Judge. ■ Special ground 1 of the amended motion for new trial complains that the trial judge, even without request, erred in failing to charge the jury literally or in substance: "That if the jury believed that the three notes sued upon by the plaintiff, executed by the defendants on or about September 23rd, 1949, were executed and delivered by the defendants to Credit Equipment Corporation in renewal of three trade acceptances dated December 16th, 1948, each for the sum of $307.20, and if they believed that said trade acceptances were made and accepted by the defendants to Ohmalc Paint & Refining Com-

pany, Inc., and if they believed also that Credit Equipment Corporation had for a valuable consideration purchased said trade acceptances on or about January 25, 1949, from Ohmalc Paint & Refining Company, Inc., as contended by the plaintiff, that then and in such such event such execution of the three notes sued upon by the plaintiff and the surrender therefor of said trade acceptances by the plaintiff to the defendants, if the jury believed such to be the case, would constitute a waiver of any alleged failure of consideration for the trade acceptances which may have occurred prior to the execution of said renewal notes and if such failure of consideration was known to the defendants at the time of their execution of said renewal notes."

On the former appearance of the case here there was nothing in the record to indicate that the notes sued upon were given in renewal of instruments previously made by the defendants. The only evidence submitted upon the trial showed without dispute the notes were made payable to the plaintiff at the direction of Ohmalc Paint & Refining Company, a corporation, that was to furnish the consideration of the notes. In this state of the record this court correctly ruled that the plaintiff was not a holder in due course of the notes.

On the trial of the case we presently review the defendants contended, as on the first trial of the case, that the notes sued upon were originally given in consideration of certain goods and services to be furnished and rendered to the defendant, under the terms of a certain contract to which the paint company, and the defendant were the only parties; that at the direction of the paint company the notes were made payable to the plaintiff; that the consideration of the notes completely failed.

The plaintiff did not plead, but on the second trial of the case for the first time so far as the record reveals, made the contention and submitted evidence that the notes sued upon were given by the defendants in renewal of certain trade acceptances negotiable in character, originally made payable to Ohmalc Paint & Refining Company and of which the plaintiff was the holder in due course. This issue not having been before the court on the previous appearance of the case, the opinion then rendered was not an adjudication of the plaintiff's right, on the succeed-

ing trial of the case, to prove it was a holder in due course of the notes sued upon.

The definition of a holder in due course of a negotiable instrument as contained in Code § 14-502 is as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact: (3) That he took it in good faith and for value; (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Code § 14-305 makes absences or failure of consideration matters of defense as against any person not a holder in due course. But the instant that a negotiable instrument is negotiated to a holder in due course the defense relative to its consideration is precluded. Code §§ 14-507, 14-508; *First National Bank of Sandersville* v. *Moore*, 37 *Ga. App.* 698 (1) (141 S. E. 502); *Farmers & Merchants Bank of Cleveland* v. *Miller*, 37 *Ga. App.* 668 (141 S. E. 419); *Peoples Loan &c. Corp.* v. *Latimer*, 183 *Ga.* 809, 813 (189 S. E. 899). (Illegality of consideration is not a defense to negotiable instruments in hands of holder in due course). *Latimer* v. *Peoples Loan &c. Corp.*, 53 *Ga. App.* 323 (2) (185 S. E. 573); *Swafford* v. *Certified Finance Co.*, 90 *Ga. App.* 83 (82 S. E. 2d 168). (Holder in due course takes instrument free from defense of failure of consideration).

The immunity of the holder in due course from defenses available to prior parties, such as want or failure of consideration, becomes fixed at the time the instrument is negotiated. Subsequently to that time no act or conduct of the maker short of making payment in full or being adjudicated a bankrupt can enhance, diminish, or in any wise affect the right of the holder in due course to enforce the payment of the instrument free of defenses relative to its consideration. When a holder in due course takes from the maker a renewal of a negotiable instrument his relationship to the second paper is the same as it was to the former. "Cases that have passed on the question agree that a renewal of an instrument in the hands of a holder in due

course does not destroy his status and right to protection as such a holder." 8 Am. Jur. 96, § 358.

It is apparent from the facts recited and the principles of law to which reference is made that, if the plaintiff's contention that it occupied the status of holder in due course of the trade acceptances is correct, the defendant prior to and at the time of making the notes sued upon was cut off from interposing the defense of failure of consideration to the trade acceptance and likewise to the notes, regardless of whether they were aware of that defense when the notes were made. Hence if the plaintiff's evidence be accepted as true, on the occasion when the notes were made, no defense of failure of consideration was available to the defendants. It is elementary that one cannot by his conduct waive a defense he does not have.

It is obvious that the plaintiff's contention that the trial judge omitted the instructions appropriate to the issues as to whether the defendants waived the defense of failure of consideration by signing the notes sued upon in renewal of the trade acceptances is without merit.

The plaintiff's evidence permitted no inference except that it was a holder in due course of trade acceptances payable to Ohmalc Paint & Refining Company at the time the notes sued upon were made in renewal of those instruments. So if the plaintiff's evidence was true the defendants had no defense that they could waive or be estopped to urge against the trade acceptances when the notes sued upon were made.

No evidence submitted by the defendants supported or authorized any conclusion except that the only trade acceptances or notes executed by them were made payable to the plaintiff, and that they gave neither trade acceptances nor notes payable to the Ohmalc Paint & Refining Company.

Hence, it appears that the charge which the ground complains should have been given the jury was not applicable to any issue made by the evidence adduced on the trial.

■ The second ground of the amended motion for new trial complains that the judge refused to give a pertinent legal charge to the jury, though the charge was requested in writing. We

arc of the opinion that, under the circumstances of this case, the court was required to give the requested charge. In the first place the charge was required by the pleadings and evidence without a request because it covered one of the only two issues involved in the case. In such circumstances the attorneys for the plaintiff had the right to assume that the court would give the substance of the request without being requested to do so and the court owed the duty to them to allow them enough time to prepare a written request before the jury was unconditionally sent out to finally decide the case. The following are the circumstances under which the court let the jury retire, stated in the motion for a new trial in the judge's own words: "During the course of the argument before the jury by Mr. Williamson, attorney for the defendant, Mr. Ford, while entering into a discussion of the law between Mr. Ford and Mr. Williamson, turned to the Court, who was at that time busily engaged in writing out by his hand his charge to be given to the jury, and stated to the Court, 'I am going to ask you to charge this principle of law set out in the 108 Georgia, page 12,' and named the case and laid the case upon the desk of the Court; the Court at that time not feeling it necessary to make any answer whatsoever and still continuing to write his Charge laid the book to the side and said, 'I will read it.'

"At some stage later Mr. Ford handed to the Court another book—134 Georgia—open to a case of Tuttle versus Stovall—page 325, and stated, 'This is the same principle, which I want the Court to read,' and the Court said, 'I will read it.'

"The Court continued, without interruption, the writing of the charge in the case, partially in long hand, and when Mr. Williamson had finished his concluding remarks the Court immediately entered upon his charge to the jury in the usual way.

"After the jury had been charged and the charge had been completed and as the Court was in the process of instructing the bailiff to take the jury to the jury room, the Court was interrupted by Mr. Ford who approached the Bench and asked the Court if the Court intended to charge the principles in these decisions. The Court stated that he had completed his entire charge and, as a matter of fact, hadn't had an opportunity to

even read the decisions. At that point Mr. Ford asked me if I would hold the jury in the jury box for about 5 minutes until he could prepare some written charges—requests on that principle. The Court stated at that time that the jury would continue to retire to the jury room; that the Court would later read any requests that Mr. Ford had and would later decide what to do, and, if the Court decided that he would charge the jury such requests as would be submitted by Mr. Ford, that he would call the jury back.

"About—at least 10 minutes elapsed before Mr. Ford had completed his written requests to charge. At approximately that instant the grand jury came into the courtroom to be dismissed, having completed their work for the term, at which time the Court consumed approximately 7 minutes in listening to the Grand Jury's general presentments being read, then dismissed the grand jury. As soon as they were released Mr. Ford then tendered to the Court 2 written requests to charge and before the jury had reached any verdict. The Court refused to call the jury back for a recharge." A correct and equitable solution of this case is the correct interpretation of Code § 81-1101 and of the action of the judge in letting the jury go to its room.

We can find no precedent governing this case.

When a jury retires to consider its verdict is determined by the intention of the judge trying a case. The mere fact that a jury goes to the jury room under the instructions of a judge does not necessarily mean that the court has committed them to the case without further proceedings or instructions. After completing the charge, if the court tells the jury to retire and consider its verdict, nothing else appearing, it has retired to consider its verdict because such was the intention of the judge. In such a case there is no reservation in his mind as to whether additional instructions were in order or might be in order. Under the circumstances of this case the jury was not unconditionally in its room to finally consider its verdict until the court decided *not* to give the requested charge. Until that time it was as if the court had permitted the jury to take a "recess" in the jury room until he decided whether to give the requested charge. The inevitable conclusion in this case is that the court refused to give

the charge because he did not think it was good.  It is inconceivable that he refused to give it because it was not presented in writing before the jury went to its room.  The applicable part of Code § 81-1101 is for the benefit of the court, as the court can give a request made in writing after the jury retires to consider its verdict if he desires to do so.  We are thoroughly convinced that we are doing no violence to the Code section in determining what is meant by "retires to consider of their verdict."  We repeat that in the eyes of the law the jury in this case had not retired to consider its verdict until the judge decided not to give the requested charge and to leave them in the jury room to consider the case without further instructions.  The trial judge erred in failing to give the requested charge.

Judge Nichols and the writer do not agree with the conclusion of the majority of our colleagues in reference to the second ground of the motion for new trial.

The court's statement to counsel did not intimate that the requested instructions would be considered as having been presented before the jury retired, nor did the court attempt to assure counsel that the submission of the requested charge after the jury retired would comply with the requirements of Code § 81-1101 or that the right of exception to the refusal to give the charge would be preserved.  On the contrary the judge did not even commit himself to give the requested instructions in charge to the jury, even if the same stated a sound principle of law.  The court's statement to counsel was: "At that time that the jury would continue to retire to the jury room; that the Court would later read any requests that Mr. Ford had and would later decide what to do, and, if the Court decided that he would charge the jury such requests as would be submitted by Mr. Ford, that he would call the jury back."  The record clearly shows that there was no recess and the jury having been charged had the case unconditionally submitted to them.  So far as the record shows the jury was not even informed that any additional charge might in any event be given to them.  They were by the trial judge permitted to take the case for consideration and no additional instructions were given them from the time they retired until the return of the verdict.  The trial judge did not

attempt to extend the time in which a request to charge may be presented beyond the retirement of the jury; indeed, he had no authority to so alter the requirements of the statute. The court could, of course, have recessed the court and withheld the case from the jury's consideration to give counsel time and opportunity to prepare the requested charge before the jury retired. That the trial judge explicitly refused to do, even though requested by counsel who desired to present the request. Code § 81-1101 does not authorize the trial judge to extend the presenting of the request to charge or otherwise vary the requirements of the Code section.

■ Special ground 3 assigns as error the trial judge's failure to charge Code § 38-107 in its entirety. The ground fails to show in what way this omission was more harmful to the defendants than it was to the plaintiff and is for that reason without merit. *Atlanta Gas Light Co.* v. *Cook,* 35 *Ga. App.* 622 (5) (134 S. E. 198).

■ The evidence supported the verdict and the general grounds are without merit.

*Judgment reversed. Felton, C. J., Gardner, P. J., Townsend and Carlisle, JJ., concur. Quillian and Nichols, JJ., dissent from the majority holding in the second division of the opinion, and from the judgment.*