(47 Misc. Rep. 240.)

### U. T. HUNGERFORD BRASS & COPPER CO. v. BRIGHAM.

(Supreme Court, Trial Term, New York County. May, 1905.)

1. USURY—CONTINGENT BENEFITS.

 Where a loan contract gives the lender a right to demand repayment of the principal sum, with legal interest in any event, and there is a further stipulation for a contingent benefit beyond the legal rate of interest, the contract is usurious.

2. SAME.

 Where a borrower gives the lender a note, and at the same time, by separate agreement, gives him the option to either demand payment of the note, or to cancel the note and take stock deposited as collateral security and dividends thereon in lieu of the note at any time before or after maturity, the transaction is usurious.

3. ESTOPPEL—GROUNDS—REPRESENTATIONS.

 Where a lender was informed by the borrower, who was his attorney, that a loan contract drawn by the latter was "all right"—i. e., valid in law—the borrower was estopped to plead that the contract was usurious.

Action by the U. T. Hungerford Brass & Copper Company against Henry M. Brigham. Judgment for plaintiff.

Henry W. Sykes, for plaintiff.
Richard T. Greene, for defendant.

CLARKE, J. The action is on a promissory note. The defense is usury. The note, dated December 21, 1903, for $3,333.33 payable December 20, 1904, was made by defendant and another, payable to U. T. Hungerford, who indorsed and delivered it to plaintiff company. Plaintiff took with notice, as Mr. Hungerford was an officer. of the company. The defendant gave 100 shares of the Goetz Manufacturing Company stock, par value $100 per share, as collateral security. The note was given upon the renewal of a loan made November 7, 1903. The defendant relies upon an agreement under seal of even date with the renewal note. The agreement is between the makers of the note, as parties of the first part, and the payee, as party of the second part, and recites that the payee "has this day discontinued the joint note of the parties of the first part for the sum of $3,333.33, payable one year from date." It further recites the deposit of the stock as collateral,· and provides: "When the said note shall fall due and become payable, the said party of the second part shall have the option of either demanding payment of the said sum of $3,333.33 or of canceling or surrendering the note and accepting and receiving the said stock in lieu of said sum of $3,333.33," and, also, "that at any time prior to the maturity of said note the party of the second part shall have the privilege of surrendering said note and receiving said stock, and that any dividends declared upon the said stock during the term of this agreement are to belong to and be the property of the party of the second part in case he shall exercise his option pursuant to this agreement, and, in case he shall fail so to do, the dividends, if any, received by the party of the second part on account of said stock shall be credited on account of said note." The stock deposited as collateral was sold upon nonpayment of the note after maturity, and only eight dollars was realized. The jury has returned a special verdict in the negative in answer to the question:

"Were the shares of stock of the Goetz Manufacturing Company, which were attached to the note in suit as collateral security and alluded to in the contract of even date, on that day worth more than $3,333.33?"

The lender, plaintiff's assignor, was an officer of the Goetz Company at the time he took its stock as collateral. The defendant is an attorney at law, and the loan was made to him by his client. The agreement was drawn by the defendant, who assured his client that it was all right. Both parties move for the direction of a verdict. It does not appear that there was any usurious agreement at the time the original loan was made, nor is there any exaction of any greater sum or greater value than the statutory allowance set forth· in the note itself. But, as stated by Judge Rapallo in Pratt v. Elkins, 80 N. Y. 198, 202:

"Even though it were not shown that the original loan was usurious, if the note given in renewal was tainted with usury, that security· was void, and an action could not be maintained upon it." .

And, although the renewal note considered alone is a valid instrument, if there is a separate instrument containing the usurious consideration, the entire transaction is usurious and the renewal note void. Swartwout v. Payne, 19 Johns. 294, 10 Am. Dec. 228. The defendant has shown that a separate agreement was made. Our first inquiry is

whether by its terms it was usurious. "Usury consists in the corrupt agreement of the parties by which more than lawful interest is to be paid." Rosenstein v. Fox, 150 N. Y. 354, 363, 44 N. E. 1029. The agreement recites the discount of the note. There is evidence that a sum amounting to approximately 6 per cent. of the face value of the note was paid in advance. But the mere fact of the discount is not evidence of usury. Bankers are expressly authorized by statute to discount commercial paper (Banking Law, Laws 1892, p. 1869, c. 689, § 55), but such authorization does not preclude all but bankers from taking interest in advance. Although an additional advantage is thereby gained by the lender, it is held that, in view of long-established commercial custom, individuals and corporations, as well as banks, may lawfully discount commercial paper. New York Firemen Ins. Co. v. Ely, 2 Cow. 678; Utica Ins. Co. v. Bloodgood, 4 Wend. 652; Mount v. Suydam, 4 Sandf. Ch. 399; Marvine v. Hymers, 12 N. Y. 223; International Bank v. Bradley, 19 N. Y. 245, 254. I am of opinion, however, that the option given the lender to take the stock and dividends in lieu of the note at any time before or after maturity is usurious. The plaintiff presented evidence that the Goetz Company was insolvent when the loan was made, and that its stock was, at best, a hazardous security. But this is not a case where the lender takes a hazard. He may insist upon payment of the note, and need not take the stock. In Fellows v. American Life Ins. & Trust Co., 1 Sandf. Ch. 203, cited by plaintiff, a borrower sold the lender property of doubtful value as an inducement to make the loan. Its full value was paid by the lender, who took the whole risk. The court says:

"The distinction between the unconditional purchase of such a bubble, at its then estimated value, and the stipulation by the lender for the benefit of its contingent rise, while he hazards nothing on his part, is too manifest to require further illustration."

Neither is this a case where it is within the debtor's power to limit payment to the legal rate. Sumner v. People, 29 N. Y. 337, 339. But this agreement is within the rule that, where the lender is given a contingent benefit in addition to the legal rate of interest, the agreement is usurious. "Whenever the lender stipulates even for the chance of an advantage beyond the legal interest, the contract is usurious, if he is entitled by the contract to have the money lent with the interest thereon repaid to him at all events." Cleveland v. Loder, 7 Paige, 557. "It is enough to render it usurious if, in addition to the legal interest, it provides for the payment of excessive interest upon a contingency." Leavitt v. DeLauny, 4 N. Y. 363.

The language in Barnard v. Young, 17 Ves. 44, is directly applicable to the facts in this case. The court said:

"The lender is at the election to have his principal and interest or to have a given quantity of stock transferred to him. His principal never was in any hazard, as he was, at all events, sure of having that, with legal interest, and had a chance of an advantage if stock rose. It was usurious to stipulate for that chance."

This case is cited in Browne v. Vredenburgh, 43 N. Y. 195, where the Court of Appeals restates the rule that:

"When a lender stipulates for a contingent benefit beyond the legal rate of interest and has the right to demand the repayment of the principal sum, with the legal interest thereon, in any event, the contract is in violation of the statute prohibiting usury and void."

Under these authorities the special verdict of the jury and the fact that the stock was ultimately sold for a nominal sum are immaterial. If this agreement may be relied upon as a defense, a verdict will have to be directed for the defendant. The plaintiff contends that the defendant is estopped from pleading usury. In considering this question, the relation of the parties is material. The defendant was at the time of obtaining the loan and the giving of the note and agreement the personal attorney of the lender. He drew the agreement now interposed as a defense. His client, before taking the agreement, inquired of the defendant whether it was all right, and was informed by him that it was. In all transactions by an attorney with his client the highest degree of fairness and good faith is required of the attorney; the reason, as stated by Judge Story, being that:

"He who bargains in a matter of advantage with a person placing a confidence in him is bound to show that a reasonable use has been made of that confidence." Story, Eq. Jur. §§ 310, 311.

It is a general rule that, where one of the parties in the course of the negotiations makes a representation of a fact material to the transaction, the other party will not be bound by the agreement either where the representation was fraudulently made with intent to deceive or concerns a fact that is peculiarly within the knowledge of the party making it. The representation made was in effect that the agreement was valid in law. The lender acted under a mistake as to the law. But the mistake was not mutual. That a party may not be heard to plead a mistake of law in order to avoid liability for his act finds no exception in its application to usurious agreements. If greater interest than the law allows is intentionally taken, that constitutes the agreement unlawful. Bank of Salina v. Alvord, 31 N. Y. 473. But, as stated in Greene v. Smith, 160 N. Y. 539, 55 N. E. 212, quoting Judge Finch in Haviland v. Willets, 141 N. Y. 50, 35 N. E. 960:

"It is equally well settled that where there is a mistake of law on one side, and either positive fraud on the other, or inequitable, unfair, and deceptive conduct, which tends to confirm the mistake and conceal the truth, it is the right and duty of equity to award relief. All the cases which deny a remedy for mere mistake of law on one side are careful to add the qualification that there must be no improper conduct on the other."

For similar reason, this court will not permit an attorney to take advantage of the ignorance of a client and assert the invalidity of an agreement between them which the attorney had pronounced valid. A statement of opinion upon a question of law, where the facts are equally well known to both parties, does not work an estoppel. Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093; Brewster v. Striker, 2 N. Y. 19; Norton v. Coons, 6 N. Y. 33; Chatfield v. Simonson, 92 N. Y. 209, 218; Whitwell v. Winslow, 134 Mass. 343. The same qualification, however, applies in case of estoppel as in case of mistake, for a representation of what the law

is by one learned in the law to one ignorant thereof, especially where the relation of attorney and client exists, is in the nature of a representation of fact. Bigelow on Estoppel (5th Ed.) p. 572, § 2, cited with approval by the United States Supreme Court in Sturm v. Boker, supra, says that a party making a statement of law is not estopped "unless he was guilty of clear moral fraud, or unless he stood in a relation of confidence towards him to whom it was made." The author continues:

"The rule in regard to statements of opinion and statements of law is, it seems, based upon the ground that the truth is uncertain, or that the person to whom the statement is made knows as much about the matter as the other. When this is not the case, when the person making the statement in the form of an opinion, or perhaps of a rule of law, knows of facts which make the 'opinion' a sham, or knows that his rule of law is false, he has really made a misrepresentation of fact in the one case, and of something in the nature of fact in the other (in that his statement amounts to an assertion that the law has been so laid down); and then if the rest of the elements required in ordinary cases of misrepresentation are present the estoppel is made out. * * * This will be the case, and the law will take cognizance of it, it seems, where special trust and confidence is known to be reposed in the party making the representation, and he actually or virtually claims the knowledge of an expert, or where he stands in a confidential relation towards the one to whom he makes the representation and with whom he is dealing on that footing."

The author cites 1 Story's Equity Jurisprudence (13th Ed.) 207, 208, where in the footnote he uses the relation of attorney and client as an illustration of such relation. It is the established law of this state that there may be an estoppel in pais against usury, as well as against other defenses, in which case an action may be maintained upon the instrument taken for the loan, even though it is declared by the statute to be void. Payne v. Burnham, 62 N. Y. 70; Verity v. Sternberger, 62 App. Div. 112, 70 N. Y. Supp. 894, affirmed 172 N. Y. 633, 65 N. E. 1123. Estoppel has frequently been applied, where the debtor on a usurious obligation has induced, by representations that it is valid and subject to no defense, a person who has no knowledge of the usurious nature of the obligation to purchase it. So a mortgagor is estopped upon an assignment of the mortgage (Miller v. Zeimer, 111 N. Y. 441, 18 N. E. 716; Weyh v. Boylan, 85 N. Y. 394, 39 Am. Rep. 669; Payne v. Burnham, 62 N. Y. 70; Verity v. Sternberger, 62 App. Div. 112, 70 N. Y. Supp. 894, affirmed 172 N. Y. 633, 65 N. E. 1123), and the maker or indorser upon the sale or assignment of a note (Lewis v. Barton, 106 N. Y. 70, 12 N. E. 437; Union Dime Sav. Inst. v. Wilmot, 94 N. Y. 221, 46 Am. Rep. 137; Fleischmann v. Stern, 90 N. Y. 110; Ahern v. Goodspeed, 72 N. Y. 108), where the representation was that the mortgage was a valid obligation or that the note was business paper. In Payne v. Burnham, supra, Church, C. J. (at page 73 of 62 N. Y.), says:

"An estoppel in pais is very well defined by Nelson, J., in Welland Canal Co. v. Hathaway, 8 Wend. 483, 24 Am. Dec. 51. He says: 'As a general rule, a party will be concluded from denying his own acts or admissions which were expressly designed to influence the contract of another, and did so influence it, and when such denial will operate to the injury of the latter.'"

In this case the defendant is estopped from setting up the defense of usury. He is concluded from denying the assertion of the valid-

ity of the agreement. Although the assertion was as to the legal· validity of the instrument, the question of its validity was a material factor in the negotiations and it was peculiarly within defendant's knowledge. Moreover, the client had a right to rely upon defendant's special knowledge as to the law. The assertion was designed to and did influence the lender, and to deny it now will operate to his injury.

A verdict is directed for the plaintiff for $3,333.33, with interest from December 20, 1904, and judgment may be entered for that sum, with costs.

Judgment for plaintiff, with costs.