## Richmond

Paul H. Heubusch, Individually, and Trading as Heubusch and Heubusch, A Partnership v. Walter S. Boone, Jr.

A. M. Reynolds, Jr. v. Walter S. Boone, Jr.

November 27, 1972.

Record Nos. 7928 and 7929.

Present, I'Anson, Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Albert I. Kassabian (Adams & Kassabian,* on brief), for plaintiff in error in Record No. 7928.

*Frank L. Cowles, Jr. (Swayze, Parris, Cowles & Tydings, on brief),* for plaintiff in error in Record No. 7929.

*John W. Edmonds, III (Richard B. Chess, Jr.; Mays, Valentine, Davenport & Moore, on brief),* for defendant in error in Record Nos. 7928 and 7929.

HARRISON, J., delivered the opinion of the court.

Paul H. Heubusch, individually and trading as Heubusch and Heubusch, a partnership, and A. M. Reynolds, Jr., appellants, filed separate appeals from a judgment of the lower court ordering that Walter S. Boone, Jr., appellee, recover of them and others the principal sum of $53,600, with 8% interest thereon from January 5, 1970, attorney's fees and costs.

The questions presented by these appeals are whether the transaction between the parties was usurious, and if so, whether under the facts and circumstances of the case the defense of usury is available to appellants.

On January 5, 1970 Shenandoah Airlines, Inc. borrowed $50,000 from Boone, and evidenced the loan by a note in the principal sum of $53,600, with 8% interest, payable 120 days from date. The note was executed by Shenandoah Airlines, Inc., through its president, Leon T. Bonner, Jr., and its secretary, Norbert J. Heubusch. It was endorsed by Leon T. Bonner, Jr., Helen Bonner, Paul R. Woods, Norbert J. Heubusch, Cornelia J. Heubusch, A. M. Reynolds, Jr. and the law partnership of Heubusch and Heubusch, by Norbert J. Heubusch, partner, and Paul H. Heubusch, partner. On the same day two deeds of trust were executed, acknowledged and recorded to secure the payment of the $53,600 note, one by Norbert J. Heubusch and Cornelia J. Heubusch, his wife, conveying their residence property in Fairfax County, Virginia and the other by Heubusch and Heubusch, a partnership, conveying three lots owned by them in Arlington County.

It further appears that on January 5, 1970 Paul H. Heubusch, for Heubusch and Heubusch, attorneys, gave Boone a written certificate that the two deeds of trust which secured him the $53,600 note were *valid* second deeds of trust, subject only to the lien of first deeds of trust on each of the parcels. The deed of trust on Heubusch's residential property stated in the body thereof that it was subject to a first deed of trust in the original principal sum of $45,000. The

deed of trust on the partnership property of Heubusch and Heubusch stated in the body thereof that it was subject to the lien of a first deed of trust in the original principal sum of $18,000.

Shenandoah Airlines, Inc. defaulted in the payment of the note, and Boone filed his motion for judgment against this corporate maker and the eight individual endorsers. Numerous responsive pleadings were filed by the defendants and the matter was heard by the court below upon the pleadings, the stipulation of counsel and *evidence taken before the court* (which evidence was not made a part of the record). Helen Bonner was dismissed as a defendant, it appearing that she did not sign her name to the note. Boone recovered judgment against Shenandoah Airlines, Inc. and all individual endorsers of the note other than Mrs. Bonner. Appeals have been taken by Reynolds and Paul H. Heubusch only.

It was stipulated that the endorsers on the note, prior to its delivery to Boone, duly endorsed their names on the back thereof for the purpose of providing security to Boone; that Leon T. Bonner, Jr. and Norbert J. Heubusch were stockholders, directors and officers in Shenandoah Airlines, Inc.; that Paul R. Woods was a director and officer in the corporation; that Paul H. Heubusch, appellant, a partner in the law firm of Heubusch and Heubusch, prepared the note and deeds of trust and procured the various signatures on these instruments; that the deed of trust on the residence property of Norbert J. Heubusch and Cornelia J. Heubusch located in Fairfax County, certified by Heubusch and Heubusch to be a second deed of trust, was in fact a fifth deed of trust; and that the deed of trust on the partnership property in Arlington County, certified by Heubusch and Heubusch as a second deed of trust, was in fact a third deed of trust.

Cornelia J. Heubusch did not sign her name to the note or the deed of trust, Norbert J. Heubusch having signed it or having had someone sign it. The certificate of acknowledgment thereon was executed by a notary (Norbert J. Heubusch's secretary), notwithstanding no personal appearance and acknowledgment thereof by Mrs. Heubusch.

The trial judge filed a memorandum of opinion setting forth his findings of fact and conclusions. He found that Shenandoah Airlines, Inc. was a legitimate corporation and not incorporated as a device to take advantage of the usury exemption for corporate borrowers; that the loan made by Boone to Shenandoah Airlines, Inc. was a legitimate corporate loan at the outset and so recognized by all the

parties; that the two deeds of trust involved were simply incidental to the liability of the corporate maker and personal liability of the guarantors; that Cornelia J. Heubusch ratified her signatures to the note and deed of trust by virtue of having filed a pleading seeking to invoke Chapter 7.1, Title 6.1 of the Code, and as a means to declare null and void the note and the deed of trust she signed; that the corporate maker and guarantors seek the "cover" of Chapter 7.1, Title 6.1 of the Code to void the note by reason of the execution of the two deeds of trust when in fact they placed no significance or reliance thereon in the signing of the note; and that their anxiety to get the loan consummated was evidenced by the fact that Leon T. Bonner signed his wife's name to the note and Norbert J. Heubusch signed his wife's name to the note and deed of trust.

The contention of the appellants is that since the corporate note payable to Boone admittedly returned a rate of interest to the lender in excess of that permitted by statute and was secured by deeds of trust other than first deeds of trust on residential real estate improved by the construction thereon of housing consisting of four or less family dwelling units, it was null and void and unenforceable by the lender by virtue of the provisions of Code §§ 6.1-330 and 6.1-330.1 (a) (Chapter 7.1, Title 6.1 of the Code of Virginia). The trial judge held that:

"Application of Title 6.1, Chapter 7.1 of the Code, to void and nullify a legitimate corporate debt under the circumstances of this case would be a travesty of justice and perpetuate a fraud through the employment of law."

We first consider whether the transaction involving appellants and appellee was rendered void by the application of Code §§ 6.1-330 (a) and 6.1-330.1 (a).

Code § 6.1-330 (a) provides, in pertinent part:

"No person ... shall directly or indirectly charge, take or receive for a loan secured in whole or in part by a mortgage or deed of trust other than a first mortgage or deed of trust, on residential real estate improved by the construction thereon of housing consisting of four or less family dwelling units, an amount in excess of that permitted by § 6.1-234 and § 6.1-234.1, whether payable directly to the lender or to a third party in connection with such loan. ..."

Code § 6.1-330.1 (a) provides:

"Any contract, note, mortgage, or deed of trust made or received in violation of this chapter shall be null and void and unenforceable by the lender or by his assignees, who are agents or principals of the lender."

It does not appear controverted that the corporate note of Shenandoah Airlines, Inc., payable to Boone, was the note intended to be described in and secured by the two deeds of trust.[1] It is conceded that the deeds of trust were not first liens on residential real estate improved by the construction thereon of housing consisting of four or less family units. It is also admitted that the rate of interest on the loan was in excess of that allowable under Code §§ 6.1-330 and 6.1-234. Without other facts and circumstances, the note made by Shenandoah Airlines, Inc. and the two deeds of trust executed to secure the note, are null, void and unenforceable as to the appellants.

While the factual situation in *Tuttle* v. *Haddock, Trustee*, 213 Va. 63, 189 S. E. 2d 363 (1972), is dissimilar from the facts in the instant case, our decision there controls as to the applicability of Code §§ 6.1-330 and 6.1-330.1 (a). *See also Albrecht* v. *Troemmler*, 213 Va. 23, 189 S. E. 2d 357 (1972).

It may be true, as was said by the trial judge, that the Legislature never intended Title 6.1, Chapter 7.1 of the Code to be used as attempted by the appellants, and the chapter may have been designed to prevent the unscrupulous practice referred to in the trial judge's opinion. However, we cannot glean this intent from a reading of the two sections of the Code involved here. The language of the sections is clear and unambiguous. Assuming the validity of the two deeds of trust, Title 6.1, Chapter 7.1 is applicable.

However, it is manifest from the findings of fact and conclusions of the trial judge that a recovery was permitted by Boone from the appellants, not alone because the court was of opinion that Code §§ 6.1-330 and 6.1-330.1 (a) did not apply, but because the application thereof to nullify "a legitimate corporate debt under

---

[1] The note which was the basis of the appellees' motion for judgment was made and executed by Shenandoah Airlines, Inc., a corporation. The note secured in the deed of trust from Norbert J. Heubusch and Cornelia J. Heubusch, referred to as "grantors", was a note described as "made by the said grantors". The note described in the deed of trust from Heubusch and Heubusch, a partnership, referred to as "grantors", was a note described as "made by the said grantor". This discrepency was not the object of comment in the briefs or in oral argument.

the circumstances of this case would be *a travesty of justice and perpetuate a fraud through the employment of law*". (Emphasis supplied.)

In the closing of the transaction we are told that Boone was represented by an attorney. The record is silent as to his name, the extent of his participation, or the degree to which Boone relied upon him. While Boone may have had his own private attorney, and may have consulted this attorney during the loan negotiations, he was justified in believing that the certification of validity and title status by the law firm of Heubusch and Heubusch was correct and given in good faith. This, not alone because he could assume that Heubusch and Heubusch had examined the titles to the respective properties, but for the further reason that the members of this firm were the owners of the property and had personal knowledge of any liens thereon. Further, the title certificate given Boone by Heubusch and Heubusch is the only certificate the record reflects was given Boone by any attorney.

When Boone sought to enforce payment of the note against the corporate maker and the various endorsers, the forgeries, false certifications and other irregularities surfaced, and all parties to the note seized upon Code §§ 6.1-330 and 6.1-330.1 (a) to void their obligation and to avoid payment of Boone's debt (Helen Bonner escaped liability for the reason heretofore noted).

The partnership certified that the deeds of trust represented second liens, which they did not, and that they were valid deeds of trust— i.e., legally enforceable—which they are not under § 6.1-330.1 (a). Whatever validity attached to the note and deed of trust by Cornelia Heubusch's ratification of her forged signature and the ratification of the unlawful acknowledgment of the notary was transitory and illusory. On the one hand appellants say that by ratification the documents thereby became legally enforceable, and on the other hand they say Code §§ 6.1-330 and 6.1-330.1 (a) made them simultaneously null and void and unenforceable. In other words, the parties to the transaction took the novel course of attempting to validate the instruments in order to apply a statute which renders them invalid.

The trial judge concluded that the loan made Shenandoah Airlines, Inc. by Boone was made in good faith for a valuable consideration and for legitimate corporate purposes. He found no fraud or improper dealings on the part of Boone and noted that without the involvement of the deeds of trust a plea of usury would not have

been available, either to the corporate maker or the endorsers of the note. In effect he has found as a fact that the appellants came into court on vehicles which are tainted by the actions of Heubusch and Heubusch—documents which were improperly if not fraudulently executed and a representation of title validity which was erroneously if not fraudulently made.

We would observe that Chapter 7.1, Title 6.1 is unusual in the severity of the penalty provided for its violation and the specificity of purpose it manifests. Its sanctions are directed solely to those loans "secured in whole or in part by a mortgage or deed of trust other than a first mortgage or deed of trust", and only where those mortgages or deeds of trust are made upon "residential real estate improved by the construction thereon of . . . four or less family dwelling units". Code § 6.1-330. A violation of Chapter 7.1, Title 6.1 renders the violating transaction "null and void", requiring the lender to forfeit the entire amount of the loan. Code § 6.1-330.1 (a).

The effect of this chapter is to render usurious an otherwise valid loan transaction *by the manner in which the loan is secured.* The interest provisions of the transaction itself do not render it usurious; it is the attachment of a mortgage or deed of trust of the type described under Code § 6.1-330 which "drags" the transaction within the ambit of the statutory prohibitions of Title 6.1, Chapter 7.1.

The statutory provisions are unusual in another respect: A corporation may assert a violation of those provisions as a defense against repayment of a usurious loan. Prior to enactment of this chapter, and in all other instances still, a corporation is barred from pleading usury. Code § 6.1-327. In the United States this exception to the applicability of usury provisions is one of longstanding and general application.[2]

It is clear that the security given for a loan is the material factor to be considered in determining whether the loan in question violates § 6.1-330.

Since we have found that the Chapter is applicable to the transaction in question here and a corporate borrower is free to assert its violation in defense, it appears that the loan is usurious on its face and that appellants can plead the defense of usury. But the trial court properly looked beyond the apparent facts to the circumstances

---

[2] The New York Legislature passed the first "corporate-exception" statute in 1850, and "[o]ther states, including Virginia, soon followed suit". Shanks, Hershel, *Practical Problems in the Application of Archaic Usury Statutes,* 53 Va. L. Rev. 327, 347 (1967).

surrounding the giving of the deeds of trust which rendered the transaction usurious:

> " 'In determining the fact of usury, courts are not bound by the form which the transaction took; on the contrary, it is not only the right but the duty of the court to probe behind the written contracts, and to examine all facts and circumstances which shed any light upon the true nature of the transaction.' " *Massie* v. *Rubin*, 270 F. 2d 60, 62 (10th Cir. 1959).

Although we have been cited no case in Virginia directly in point, the majority of jurisdictions hold that estoppel can lie to bar the defense of usury:

> "In most of the jurisdictions wherein the question has arisen the courts have taken the view that a borrower's initiation of, or fraud contributing to, a usurious transaction estops the borrower from setting up the defense of usury. The reasoning underlying such view is that to hold the transaction void would permit the borrower to take advantage of his own wrong." 16 A. L. R. 3d 513-514.

It is true that the usury statutes represent a clarification of the public policy of the state that usury is not to be tolerated, and the court should therefore be chary in permitting this policy to be thwarted. Nevertheless, instances may arise in which the borrower by his conduct or representations induces the lender to enter into a usurious agreement that he would not otherwise have made. The circumstances may be such that to permit the borrower to assert the defense of usury would work a fraud upon the lender, and make the court a party to the fraud:

> "It is a general rule that where one of the parties in the course of the negotiations makes a representation of a fact material to the transaction the other party will not be bound by the agreement either where the representation was fraudulently made with intent to deceive or concerns a fact that is peculiarly within the knowledge of the party making it. ..." *U. T. Hungerford Brass & Copper Co.* v. *Brigham*, 47 Misc. 240, 244-45, 95 N. Y. S. 867, 870 (1905).

Especially is this so where the borrower is an attorney. The special knowledge possessed by an attorney-borrower renders more likely both that he shaped the usurious transaction and that the lender relied on his representations as to its validity. Additionally, an attorney is charged with a stricter duty and burdened with a greater responsibility to ensure the legality of the transaction. "In all transactions by an attorney with his client the highest degree of fairness and good faith is required of the attorney." *Hungerford Brass & Copper Co.* v. *Brigham, supra,* at 244, 95 N. Y. S. at 870. It is for these reasons the jurisdictions that have considered this question have estopped the attorney-borrower from asserting usury as a defense. *Massie* v. *Rubin, supra; Hungerford Brass & Copper Co.* v. *Brigham, supra; Perry* v. *Shelby,* 196 Ark. 541, 118 S. W. 2d 849 (1938).

In the *Hungerford* case, the attorney-borrower was estopped from asserting that a promissory note given by him was rendered usurious by a collateral agreement permitting the plaintiff to take stock in lieu of money when the notes became due because he was the lender's personal attorney, drew up the loan agreement, and told his client the agreement was legal. Stating that ". . . this court will not permit an attorney to take advantage of the ignorance of a client and assert the invalidity of an agreement between them which the attorney had pronounced valid", 47 Misc. at 245, 95 N. Y. S. at 870, the court held:

> "In this case the defendant is estopped from setting up the defense of usury. . . . Although the assertion was as to the legal validity of the instrument, the question of its validity was a material factor in the negotiations and it was peculiarly within defendant's knowledge. Moreover, the client had a right to rely upon defendant's special knowledge as to the law. The assertion was designed to and did influence the lender, and to deny it now will operate to his injury." *Id.* at 247, 95 N. Y. S. at 871-72.

In *Perry* v. *Shelby, supra,* the attorney solicited a loan from a longtime friend, wrote the loan agreement which was found to be usurious, and secured it by three notes and a mortgage, which mortgage he represented to her as a first lien when in fact it was a second lien. The court held that estoppel lay against the attorney:

> "From the record, it is difficult to believe that [the defendant attorney] did not intend to defraud appellee. The manner in which

he drew the note and mortgage must be ascribed to ignorance or an intent to defraud. Being a lawyer, he must have known how to draw a simple note and mortgage." 196 Ark. at 545, 118 S. W. 2d at 850.

We see no valid reason why the same high standard of fairness and good faith required of an attorney in a transaction with his client should not apply to an attorney involved in the transaction under review here or any similar transaction.

It may be argued that estoppel does not lie in the case at bar because the misrepresentations made by Heubusch and Heubusch as to the deeds of trust could not have induced Boone to believe the transaction was not usurious: This because even if the deeds of trust were what Heubusch said they were (second liens), the transaction would still have been usurious under the terms of § 6.1-330— thus the misrepresentations were not material to the offense alleged.

What we have said about §§ 6.1-330 *et seq.* reveals the error of this reasoning. The giving of the deeds of trust was the material factor. The acceptance by appellee Boone of these deeds of trust, not the making of the loan itself, was the act that rendered the loan usurious. No other interpretation can be given to the misrepresentations of Heubusch and Heubusch but that they were designed to, and in fact did, induce Boone to accept the deeds of trust as security for the loan— to do the thing that made the transaction illegal. Thus the wrongful acts of Heubusch and Heubusch, and appellee's reliance thereon, were the direct causes of the illegality complained of here, and appellants should therefore be estopped from profiting by that illegality in their defense.

This conclusion supports and is consistent with the findings of the trial judge that ". . . to void and nullify a legitimate corporate debt under the circumstances of this case would be a travesty of justice, and perpetuate a fraud through the employment of law." The only practicable interpretation of this conclusion of the trial judge is that he found the actions of Heubusch and Heubusch fraudulent, and concluded that a failure to apply the doctrine of estoppel to appellants would work a fraud. His findings were based on the evidence presented before him, some of which is not available to this court, and we are required to give force and effect to them if possible.

"Courts must give effect to that which is unavoidably and necessarily implied in a judgment or decree, as well as to that which

is expressed in the most appropriate language." *Weyant* v. *Utah Savings & Trust Co.*, 54 Utah 181, 212, 182 P. 189, 202, 9 A. L. R. 1119, 1135 (1919).

■ Appellant A. M. Reynolds was represented in oral argument to be a large stockholder in the corporation. He also filed grounds of defense alleging the illegality of the transaction by virtue of the execution of the deed of trust by Norbert and Cornelia Heubusch. To maintain this position he must acquiesce in the ratification of a forgery by Mrs. Heubusch and a false certification of title by his business associate in Shenandoah Airlines, Inc. (who was also the attorney representing the borrowers during the transaction). Admittedly the record before us does not disclose that appellant Reynolds had personal knowledge of the forgeries and imperfections in the loan documents or the false certification by Heubusch. But for the purpose of asserting the defense of usury he cannot now divorce himself from the actions of his attorneys and associates.

After a careful consideration of the record we are unable to say, in light of the findings of fact by the trial judge, that the judgment complained of is plainly wrong and without evidence to support it. Accordingly it is

*Affirmed.*