## Richmond

RONALD D. RADFORD
AND GINGER T. RADFORD

V.

COMMUNITY MORTGAGE AND INVESTMENT
CORPORATION, JOHN J. BRENNAN
AND RALPH J. WOLFE

Record No. 810464.

January 20, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson and Russell, JJ., and
Gordon, Retired Justice.

*Howard E. Copeland (Howard E. Copeland, P.C.,* on brief), for appellants.

*A. Andrew Ege, Jr. (Brydges, Hudgins, Ege, Burt & O'Brien,* on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

The dispositive question in this case is whether a loan was exempt from the usury laws because it was made for "the conduct of business," an exception to the usury laws created by Code § 6.1-330.44. The answer requires an examination of the circumstances surrounding the making of the loan.

Ronald D. Radford operated a sole proprietorship in Virginia Beach known as "Radford Wallcovering." His wife, Ginger T. Radford, had no ownership interest in the business and was paid no compensation from it. Mr. Radford's profits from the operation of the business constituted his family's principal source of income. The business was operated from the Radfords' jointly-owned home. The husband's Jeep was used primarily for business purposes; the wife's Buick was used primarily for family purposes. She occasionally used her car to pick up supplies for the business, but was engaged primarily as a housewife, having the care of the Radfords' two school-age children.

The couple filed joint individual income tax returns with the Internal Revenue Service and with the Virginia Department of Taxation for the tax years 1976, 1977, and 1978. These returns reflected the income from the business on "Schedule C," and claimed the statutory exemptions for the couple and their children. They identified Mr. Radford's occupation as "self employed" and Mrs. Radford's as "housewife."

The Radfords failed to pay the income taxes due under these returns. The I.R.S. recorded tax liens aggregating $3,420.00 against their property. In need of funds to satisfy these liens and other personal debts, the Radfords applied to Community Mortgage Investment Corporation for a $20,000.00 loan. Community was unwilling to lend that amount, but agreed to a loan in the amount of $15,000.00, secured by a second deed of trust on the Radfords' home. The loan papers, prepared on February 28, 1979, provided for a 19.67% annual rate of interest.

At the loan settlement, Community Mortgage was represented by Kenneth Ross Johnson, an attorney. He obtained the Radfords' signatures to a statement, dated February 28, 1979, entirely in Mr. Radford's handwriting, which states: "Money obtained from Community Mortgage will be used for business purposes." An employee of Community Mortgage also prepared a credit application which stated that the proceeds of the loan were to be used for: "expand business—also going into retail." Mr. Radford testified that he signed this application, but did not choose its language. It was not in his handwriting.

Notwithstanding the foregoing statements, Mr. Johnson retained in escrow $4,500.00 from the loan proceeds to satisfy the Radfords' I.R.S. liens and disbursed the remaining $10,500.00 directly to them. The Radfords spent these funds for their children's private school tuition, medical expenses, and other personal obligations.

About six weeks after the loan was closed, an I.R.S. agent called Mrs. Radford to announce that the tax liens were still unpaid and that he intended to seize her Buick the following day. She called Mr. Johnson, who thought the liens had been fully satisfied out of the $4,500.00 escrow fund. After checking the land records, however, he discovered that inadvertently he had missed a recorded tax lien when examining the Radfords' title, and that the liens actually totalled $14,853.36.

Since the Radfords had spent their loan proceeds and the existing monthly payments were all they thought they could afford, they were reluctant to borrow more. Mrs. Radford testified, however, that Mr. Johnson told her that the Radfords' only alternative to prevent the I.R.S. from seizing all of their property was to increase the loan by an amount sufficient to cover the remaining tax liens. Accordingly, the Radfords authorized Mr. Johnson to arrange a new loan through Community Mortgage which would be

exactly sufficient to satisfy the I.R.S. liens in the amount of $14,853.36 and to pay off the balance of $15,882.18 due on the Community Mortgage loan made in February. The new loan was evidenced by the Radfords' note dated April 23, 1979 in the amount of $68,556.00, yielding Community Mortgage interest at an annual percentage of 19.67. This loan retired the former loan, was secured by a new second deed of trust on the Radfords' home, and forms the subject matter of this controversy.

Community Mortgage did not require a new credit application for the new loan, but at the time of closing, Mr. Johnson secured the following statement, handwritten and signed by Mrs. Radford:

" 4-23-79
This loan is to satisfy Federal Bus. taxes
Ginger T. Radford"

Mr. Radford was not present at the loan closing, but came into the office later and added his signature to his wife's handwritten statement. Mr. Johnson testified that he did not dictate the exact language of the statement, but that Mrs. Radford wrote it out after he "told her what was required."

After March 1980, the Radfords became delinquent in their monthly payments on the second trust loan. When Community Mortgage advertised their property for foreclosure, the Radfords filed this suit, obtaining a temporary injunction against the sale, and sought, pursuant to Code § 6.1-330.46, recovery of double the amount of interest paid, contending that the loan was usurious.[1] The defendants contended that the loan was made "for the conduct of business" and thus exempt from the usury laws by virtue

---

[1] The defendants Brennan and Wolf were sued as trustees under the second deed of trust. Kenneth Ross Johnson was also joined as a defendant, but the Radfords took a nonsuit as to him at the close of all the evidence.

Notwithstanding his status as a defendant, Mr. Johnson appeared as sole counsel for all defendants at trial. As such, he made an opening statement, cross-examined complainants' witnesses, then called himself as a defense witness, testified, then left the stand and argued points of law. Disciplinary Rule 5-101 of the Virginia Code of Professional Responsibility, 216 Va. 1101-02, prohibits a lawyer from accepting employment in a case in which he knows he will be a witness, subject to very narrow exceptions. DR 5-102, 216 Va. 1102, requires him to withdraw from the conduct of a trial if such circumstances arise after he has undertaken employment. Once again, we must point out the ethical problems created by such conduct. *See National Airlines* v. *Shea,* 223 Va. 578, 583, 292 S.E.2d 308, 311 (1982).

of Code § 6.1-330.44. The trial court, after hearing the evidence *ore tenus,* held that the handwritten note was "conclusive and binding" against Mrs. Radford; that while not conclusive against Mr. Radford, it was nevertheless entitled to weight as an admission by him, and that the payment of taxes arising from business income was a business purpose which exempted the loan from the usury law. The Radfords' temporary injunction was dissolved and the suit dismissed, but the effect of the decree was stayed pending appeal.[2]

The parties stipulate that the note in issue, bearing interest at an annual percentage rate of 19.67, is usurious unless the loan is exempt from the usury laws by Code § 6.1-330.44. In 1979, that section exempted from the usury laws loans which were made "for the acquisition or conduct of a business or investment as sole proprietor, owner, joint venturers or owners provided that the initial amount of the loan is five thousand dollars or more." Code § 6.1-330.44, 1979 Cum. Supp. In 1979, the statute contained additional provisions, (repealed, Acts 1981 c. 336), which stated:

> For the purposes of this section, if a borrower shall represent in his own handwriting the purposes of the loan, such representation shall be conclusive and binding upon him.
>
> For the purposes of this section, unless a loan is for family, household, or personal purposes (which shall not include a passive or active investment), it shall be deemed to be for business or investment purposes within the meaning of this section.

The usury laws serve a beneficial public purpose and are to be liberally construed with a view to advance the remedy and suppress the mischief. *Whitworth & Yancey* v. *Adams,* 26 Va. (5 Rand.) 333 (1827). "[T]he usury statutes represent a clarification of the public policy of the state that usury is not to be tolerated, and the court should therefore be chary in permitting this policy

---

[2] The Radfords contended at trial that because Code § 6.1-330.47 provides that usurious contracts, notes, and deeds of trust "shall be null and void and unenforceable by the lender," the principal of the loan was uncollectable. They abandoned this position in oral argument on appeal, conceding that the usury laws do not impair the enforcement of the loan contract with respect to the principal.

to be thwarted." *Heubusch and Reynolds* v. *Boone,* 213 Va. 414, 421, 192 S.E.2d 783, 789 (1972).

■ Usury, when pleaded, must be shown by clear and cogent proof, but the introduction in evidence of a contract expressly providing for a greater rate of interest than the law allows will establish a *prima facie* case. *See Chakales* v. *Djiovanides,* 161 Va. 48, 170 S.E. 848 (1933). Thereupon, the burden shifts to the opposing party to go forward with evidence which would bring the transaction within an exception to the usury laws, or to show some other valid reason to avoid their application. *See Brockway* v. *United States Finance Company,* 289 Ala. 198, 266 So. 2d 756 (1972).

■ In determining whether a transaction is usurious, the court has both the right and the duty to probe behind the written instruments and to examine all facts and circumstances which shed light on the true nature of the transaction. *Heubush, supra,* at 420-21, 192 S.E. 2d at 789. In the case before us, the evidence shows that the second loan subsumed the first, that all borrowed funds were to be used to pay the borrower's personal income tax liabilities and normal personal household expenses, and that these facts were clearly understood by both borrowers and lenders before the second loan was made.

In defense of the Radfords' *prima facie* showing of usury, the lender points to Mrs. Radford's handwritten note: "This loan is to satisfy Federal Bus. taxes." But the writing is an insufficient shield. As the trial court correctly held, it is not "conclusive and binding" on Mr. Radford because it is not in his handwriting. Although it constitutes an admission by him and is conclusive as to Mrs. Radford, it is an admission only as to the facts it recites. These are not sufficient to bring the loan within Code § 6.1-330.44.

■ The lender argues that the payment of "federal business taxes" is tantamount to the "acquisition or conduct of a business or investment," the area in which Code § 6.1-330.44 provides an exemption from the usury laws. We do not agree. Since the usury laws must be liberally construed, it follows that exemptions therefrom must be strictly construed, in order to "advance the remedy and suppress the mischief." *See Citizens & Southern South DeKalb Bank* v. *Watkins,* 236 Ga. 759, 225 S.E.2d 266 (1976). It was plain to the lender that the loan proceeds were not to be used as working capital of the business, nor to establish a reserve out of which future taxes would be paid when due. Out of the

proceeds of the first loan, $10,500.00 was turned over to the borrowers for unspecified use, and was actually used to pay family and household expenses, at a time when the lender believed that the borrowers' tax liability amounted to only $3,420.00. Before the second loan was made, the lender was fully aware of the disposition made of the proceeds of the first loan. When the second loan was made to retire it, the first loan was a personal family debt, entirely unrelated to the conduct of business. The proceeds of the second loan were expressly devoted to the repayment of the first loan and to the satisfaction of recorded liens for past due personal income taxes assessed against Mr. and Mrs. Radford as individuals.

Expert testimony at trial established that the taxes were personal obligations of the Radfords: "That's an individual income tax return. The tax liability would adhere to the individuals regardless of what happened to the business." All of their property, real and personal, was subject to the tax liens, whether used in business operations or not. The I.R.S. was under no obligation to exhaust business assets before levying on personal assets to satisfy the liens. The "federal business taxes" referred to in Mrs. Radford's handwritten note were in fact, and were known by the lender to be, family and personal obligations of the Radfords. Accordingly, neither Mrs. Radford's handwritten statement nor the evidence of surrounding circumstances establishes that the loan was for any purpose other than "family, household, or personal purposes." The lender thus failed to overcome the Radfords' *prima facie* showing of usury.

For the foregoing reasons, the decree appealed from will be reversed, the temporary injunction continued in effect, and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*